OPINION
{¶ 1} Defendant-appellant Linda M. Brown appeals her conviction entered by the Stark County Court of Common Pleas, on one count of aggravated robbery, in violation of R.C.2911.01(A)(3), following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On February 13, 2004, the Stark County Grand Jury indicted appellant on the aforementioned charge. Appellant entered a plea of not guilty to the charge at her arraignment on February 20, 2004. The matter proceeded to jury trial. The following evidence was adduced at trial.
 {¶ 3} Anton Hergeth testified he was at home in his apartment on December 29, 2003, at approximately 9:30 pm watching his favorite television show when he heard a knock at his door and a woman stating, "I'm lost, I'm lost." Hergeth answered the door and the woman asked if she could use his telephone. The woman was later identified as appellant. Hergeth asked appellant to wait in the hallway while he retrieved the phone, however, appellant followed him inside the apartment. Hergeth continued to watch television as appellant spoke on the phone. Appellant asked Hergeth for a pencil and paper. After scribbling something down, appellant continued to talk on the phone. Hergeth became annoyed and commented, "Would you mind, I'm watching my favorite show." Appellant returned the phone to Hergeth. When Hergeth turned around to put the phone back, appellant jumped him from behind, knocking him to the floor. Appellant sat on the man and rummaged through his pockets. She located Hergeth's wallet, removed the $64.00 in it, and left the apartment.
 {¶ 4} Mary Ann Williamson, an across-the-hall neighbor, had had an encounter with appellant earlier that same evening. Appellant had knocked on Williamson's door, asking for "Pops". Williamson informed appellant "Pops" did not live on that floor, but rather on the second floor. For ten minutes, appellant argued with Williamson that "Pops" lived on the first floor. Williamson finally gave up and shut her door. During this encounter with appellant, Williamson noticed appellant had trouble standing up and was leaning against the door casing.
 {¶ 5} After shutting her door on appellant, Williamson heard someone knocking on Hergeth's door. Williamson heard appellant ask Hergeth to use his phone. She continued to listen through the door, and eventually cracked the door open to hear better. Shortly thereafter, Williamson heard Hergeth yell for help. When Williamson opened her door wider, she observed appellant leaving Hergeth's apartment. Appellant commented to Williamson, "That fool wouldn't do what I wanted him to do". Thereafter, appellant left the apartment building.
 {¶ 6} Williamson could not get inside Hergeth's apartment as Brown had shut the door behind her. Williamson proceeded to the second floor to get the overseer of the building to assist Hergeth. Once inside Hergeth's apartment, Williamson noticed the man was in obvious pain and he had marks on his forehead and neck.
 {¶ 7} Alliance police officer Kevin Moore responded to the Alliance Community Hospital at approximately 10:30 pm on December 29, 2003. The officer had been dispatched to the hospital to interview an individual by the name of Anton Hergeth regarding an assault call. When Officer Moore spoke with Hergeth in a treatment room in the emergency department, he noticed the elderly man was in pain and upset. After speaking with Hergeth, Officer Moore proceeded to the apartment building where he interviewed Williamson as well as another resident. The officer was able to obtain a physical description of appellant. Officer Moore turned over the information he received to Detective William Mucklo.
 {¶ 8} Detective Mucklo, who received the case on January 1, 2004, began his investigation by interviewing Hergeth. During the interview, the detective showed Hergeth a photo array. Hergeth identified appellant as the individual who assaulted him. Detective Mucklo noted Hergeth picked appellant's picture from the photo lineup without hesitation and very quickly.
 {¶ 9} After concluding his interview with Hergeth, Detective Mucklo spoke with Mary Ann Williamson. The detective also showed Williamson the photo array. Detective Mucklo recalled Williamson took approximately four to five minutes to make her identification. Mucklo described Williamson as holding the lineup in one hand and "kind of pointing" as she reviewed each photograph. Although Williamson stopped at one or two of the photographs, she did not say anything to the officer until she picked number three, which was a photograph of appellant. On cross-examination, defense counsel asked Mucklo if Williamson had picked the wrong person prior to selecting appellant. Mucklo responded Williamson never made a mistake and she was positive when she identified appellant.
 {¶ 10} Mucklo also testified no fingerprints were lifted from the notebook and piece of paper appellant had been writing on when she was in Hergeth's apartment. Mucklo stated he did not have the doors fingerprinted, explaining doors were the worse for lifting fingerprints due to the fact people are constantly touching them, so there are a multitude of prints on them.
 {¶ 11} After hearing all the evidence and deliberations, the jury found appellant guilty as charged. The trial court deferred sentencing until the completion of a pre-sentence investigation report. At the sentencing hearing on April 30, 2004, the trial court denied appellant's request for community control sanctions, and imposed a five year term of imprisonment.
 {¶ 12} It is from this conviction and sentence appellant appeals, raising the following assignments of error:
 {¶ 13} "I. THE APPELLANT WAS DENIED A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT.
 {¶ 14} "II. THE APPELLANT'S CONVICTION WAS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE."
 I {¶ 15} In her first assignment of error, appellant maintains she was denied a fair trial as a result of prosecutorial misconduct. Specifically, appellant challenges the prosecutor's closing argument during which she commented on the credibility of the victim, and asked the jury to use reason and common sense when seeking justice.
 {¶ 16} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990),51 Ohio St.3d 160, certiorari denied (1990), 498 U.S. 1017,111 S.Ct. 591, 112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. Dardenv. Wainwright (1986), 477 U.S. 168, 106 S.Ct. 2464,91 L.Ed.2d 144. A trial is not unfair, if, in the context of the entire trial, it appears clear beyond a reasonable doubt the jury would have found the defendant guilty even without the improper comments. State v. Treesh (2001), 90 Ohio St.3d 460, 464." Furthermore, both the prosecution and the defense have wide latitude during opening and closing arguments.
 {¶ 17} With respect to the prosecutor's comment, "Mr. Hergeth, his credibility, I thought he was totally credible," we note the State concedes such was an improper vouching for the credibility of the witness. Appellant did not object to the comment; therefore, the statement must be reviewed under a plain error analysis, i.e., but for the comment, would the outcome of the trial clearly have been different? Upon review of the entire record in this matter, we find appellant's substantial rights were not prejudicially affected by this isolated comment. The comment was made during the prosecutor's rebuttal to appellant's closing argument, during which appellant's trial counsel repeatedly emphasized the alleged discrepancies between the testimony of the victim and the other witnesses. Also, the trial court, on at least two occasions between closing arguments and charging the jury, advised the jury closing arguments were not evidence and should not be treated as evidence.
 {¶ 18} With respect to the second challenged comment, we find such was not improper. The prosecutor neither implicitly nor explicitly stated justice in this matter would be a conviction as opposed to an acquittal, nor did the prosecutor appeal to public demand or community pressures to convict.
 {¶ 19} Based upon the foregoing, we find appellant was not denied a fair trial by the statements. Accordingly, appellant's first assignment of error is overruled.
 II {¶ 20} In her second assignment of error, appellant raises sufficiency and manifest weight of the evidence claims.
 {¶ 21} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 22} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983),20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 23} Appellant was convicted of one count of aggravated robbery, in violation of R.C. 2911.01(A)(3), which provides: "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following: * * * (3) Inflict, or attempt to inflict, serious physical harm on another."
 {¶ 24} Appellant submits the case hinged upon the credibility of the two eye witnesses, both of whom appellant maintains were not credible. Appellant suggests the victim, Anton Hergeth, was not a credible witness because of his age, his misidentification of appellant's trial counsel as the same attorney who had questioned him at the preliminary hearing, and his testimony during cross-examination he was beaten with a telephone. Appellant contends Mary Ann Williamson was an incredible witness as she did not make an in-court identification of appellant and her disability, being blind in one eye, made her identification through the photo lineup suspect.
 {¶ 25} Upon review of the record, we find both witnesses unquestionably identified appellant as the perpetrator of the crime. Detective Mucklo testified Hergeth "immediately" chose appellant's photo from the lineup. Additionally, Hergeth made an in-court identification of appellant. Although Williamson admittedly thought a different individual from the lineup might be the perpetrator, she knew she had picked out the wrong individual and continued to review the array, before acknowledging appellant as her final and positive choice.
 {¶ 26} In the case sub judice, the jury was free to accept or reject any or all of the witnesses' testimony and assess the witnesses' credibility. Based upon the facts noted supra, and the entire record in this matter, we find there was sufficient, competent evidence to support appellant's conviction and the same was not against the manifest weight of the evidence.
 {¶ 27} Appellant's second assignment of error is overruled.
 {¶ 28} The judgment of the Stark County Court of Common Pleas is affirmed.
By: Hoffman, J. Gwin, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.