OPINION *Page 2 
{¶ 1} Defendant-appellant Jordan Gibson appeals his conviction and sentence from the Stark County Court of Common Pleas on five counts of aggravated arson. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On April 30, 2007, the Stark County Grand Jury indicted appellant on three (3) counts of aggravated arson in violation of R.C. 2909.02(A)(1), felonies of the first degree, and two (2) counts of aggravated arson in violation of R.C. 2909.02(A)(2), felonies of the second degree. At his arraignment on May 4, 2007, appellant pleaded not guilty to the charges contained in the indictment.
 {¶ 3} On June 14, 2007, appellee filed a motion to amend counts one and two of the indictment to include "aid or abet" language. Pursuant to an Order filed on June 14, 2007, the trial court granted the motion and ordered that counts one and two "shall include the language, `and/or did aid or abet another in so doing.'"
 {¶ 4} Thereafter, a jury trial commended on June 18, 2007. The following testimony was adduced at trial.
 {¶ 5} On February 24, 2007, Donna Jackson was home with her son, Tyler Ahmed at their house on 11th Street in Massillon, Ohio. At approximately 9:00 a.m., she was watching the news when she heard loud noises coming from the porch area of her house. Jackson then walked into the living room where she saw "flickering" on the mini blinds. When she opened the blinds, she saw that her porch was on fire. Jackson testified that she then opened the front door, immediately shut it again and then called 911. She then ran upstairs to get her son and the two ran out the back door. *Page 3 
 {¶ 6} Jackson testified that they were not able to get out of her yard because the back gate was padlocked and she did not have the key. She then called her daughter who came home and opened the gate so that Jackson and her son could get out.
 {¶ 7} At trial, Tyler Ahmed, Donna Jackson's son, testified that he knew appellant and also knew Zachary Bush and Robert Lippert, III. Ahmed testified that he had been accused of breaking and entering into Robert Lippert, III's house, but that he had never been charged with a home invasion.
 {¶ 8} The next witness to testify at trial was Victoria Herring. Herring testified that she was home before the fire when she noticed her neighbor, Zachary Bush, running from the driveway with what appeared to be a gas can. She testified that after learning of the fire, she contacted the Massillon Police Department.
 {¶ 9} Rodney Deitz, Donna Jackson's neighbor, testified that his house sustained approximately $1,874.00 in damage when the fire damaged the siding. The majority of the damage was paid by his insurance company.
 {¶ 10} Brandon Isner also testified at trial. Isner testified that, on February 24, 2007 at around 9:30 a.m., he was on 11th
Street in his car when he observed a car parked on the left side of the road with two people in the front seat. Isner testified that "[t]here was one person out of the car walking toward the house that got burned down with a gas can in his hand." Transcript at 131-132. Isner testified that he was not able to identify the person with the gas can because the person had a hood up over his or her head. When he turned and started coming back south on 11th Street, Isner saw smoke *Page 4 
pouring out of the Jackson home. He then stopped in front of the house and called 911. Isner testified that he gave a statement to the police before going to work.
 {¶ 11} The next witness to testify at trial was Robert Lippert, III. Lippert testified that he was in prison as of the trial because of his part in the fire. Lippert testified that two or three days after the fire at the Jackson house, the police picked him up and he gave them a statement. He denied that he was promised anything in exchange for his statement and testified that he pleaded guilty to three counts of aggravated arson. Lippert also testified that he was promised a four year sentence for his continued cooperation in the case and that he had received a four year sentence.
 {¶ 12} Lippert also testified that on the evening of February 23, 2007, he had his brother, Zachary Bush, appellant and others over and that they were drinking and doing cocaine. After Lippert's brother left, Lippert, appellant and Zachary Bush drove around looking for cocaine. While Lippert was driving, appellant was in the backseat and Zachary Bush was in the front passenger seat. Lippert testified that while they were driving around, Tyler Ahmed's name came up and that while he did not know Ahmed, he knew of him. The following testimony was adduced when he was asked if there were any hard feelings between himself and Ahmed at the time:
 {¶ 13} "A. I guess you could say that.
 {¶ 14} "Q. How come?
 {¶ 15} "A. Number 1, he kicked in my back door and No. 2, put a gun in my brother's face.
 {¶ 16} "Q. When you say he kicked in your back door, was that a home invasion that took place at your home about a year earlier? *Page 5 
 {¶ 17} "A. Yes, sir.
 {¶ 18} "Q. From this incident. And how many people — were you home when that invasion took place?
 {¶ 19} "A. Yes, sir.
 {¶ 20} "Q. How many people came into your house?
 {¶ 21} "A. Three.
 {¶ 22} "Q. Did they have masks on?
 {¶ 23} "A. Yes, sir.
 {¶ 24} "Q. And you believe that Tyler Ahmed was one of those people?
 {¶ 25} "A. He went around school bragging about it, sir.
 {¶ 26} "Q. As a result of that, your father faced some criminal charges?
 {¶ 27} "A. Yes, sir.
 {¶ 28} "Q. What happened to him?
 {¶ 29} "A. He went to prison.
 {¶ 30} "Q. Now, back in February of 2007 had he been released from prison?
 {¶ 31} "A. Yes, sir." Transcript at 152-153.
 {¶ 32} According to Lippert, the three then discussed burning down Ahmed's house. When Lippert told appellant what he believed Ahmed had done, appellant "said fuck that shit, we ain't taking it." Transcript at 154. Lippert testified that he then drove to the corner and let appellant out of the car, but that "the original plan was not to burn the house though." Transcript at 154. According to Lippert, Zachary Bush said that he had some gas in his garage and they drove to his house to get the same. Lippert further testified that while he and Zachary Bush were sitting in Lippert's car at the corner, after *Page 6 
dropping appellant off at the Jackson house, he saw ten to fifteen foot flames coming from the porch of the Jackson house. Appellant was running toward the car. Lippert testified that when appellant got to the car, he said "get the fuck out of here." Transcript at 155.
 {¶ 33} When questioned about what happened next, Lippert testified that they then threw the gas can by the hospital and that he later went back and retrieved the can. They then went back to Lippert's apartment.
 {¶ 34} On cross-examination, Lippert testified that it was his understanding that he was going to receive a four year sentence with early release after nine months. On redirect, he agreed that he was not guaranteed release in nine months, but that judicial release was conditioned on his good behavior in prison.
 {¶ 35} Zachary Bush also testified at appellant's trial. Bush testified that he was residing in the detention center as of the trial and was set to go to the Department of Youth Services for 90 days. Bush testified that, on February 26, 2007, he spoke with the police about a fire that occurred in his neighborhood. When asked if the police had made any promises to him, Bush testified that the police "implied that if I didn't cooperate I was going to be locked up and they would charge my mother with . . . — like damages to the house." Transcript at 178. Bush further testified that after he was charged, he was told that if he did not cooperate, he would be charged as an adult and could be sentenced until he was 25 years old.
 {¶ 36} Bush testified that, on February 23, 2007, he was at Robert Lippert's apartment hanging out, drinking, smoking and doing drugs. According to Bush, he drove around in Lippert's grandmother's car, a green Oldsmobile, with appellant and Lippert *Page 7 
for a couple of hours drinking. At some point in time, Bush became aware of bad feelings between Lippert and Tyler Ahmed after appellant mentioned Tyler and said that he should pay for what he did. According to Bush, appellant suggested that they set Ahmed's house on fire by pouring gas on it and igniting the same. After Bush indicated that there was gas in his garage, the three went over to his house and Bush retrieved the gasoline and handed the same to appellant, who was in the back seat. Bush and Lippert then dropped appellant off at Ahmed's house and proceeded down the road two houses to wait on him. He testified that he observed flames at Ahmed's house after appellant returned to the car.
 {¶ 37} On cross-examination, Bush testified that, while appellant came up with the idea of using gasoline to start the fire, he came up with the idea of obtaining the gasoline from his house. He also admitted that he originally told the police that appellant retrieved the gasoline came from his home and that he had lied to the police. Bush also denied, on cross-examination, that they originally went to his house on February 24, 2007 to get some marijuana.
 {¶ 38} At trial, Officer Curtis Ricker of the Massillon Police Department testified that he was assigned to the detective bureau in February of 2007 when he was called to the Jackson's address on 11th Street about an arson investigation. Officer Ricker testified that he began perusing his database of individuals associated with both Abbey Ahmed, Donna Jackson's daughter, and Tyler Ahmed and that he also spoke with Brandon Isner. Isner, according to the officer, told him that he had observed a suspicious vehicle and might be able to pick the vehicle out of a photo lineup. *Page 8 
 {¶ 39} Officer Ricker testified that, at some point during his investigation, he became aware that Tyler Ahmed had a possible tie or association to Robert Lippert, III. He testified that in 2006, Ahmed was a suspect in an aggravated robbery at the Lippert residence, but that Ahmed was never charged with anything. According to the officer, it "provided me motive for the fire at the Jackson residence." Transcript at 230.
 {¶ 40} Officer Ricker further testified that when the road patrol responded to an unrelated disturbance at Lippert's apartment, he responded also to see what was happening. When Officer Ricker arrived, he observed a 1998 dark green Oldsmobile Intrigue that fit the description of the vehicle that Brandon Isner had provided to him. Officer Ricker took a photograph of the vehicle and used it in a photo line up. Isner identified Lippert's vehicle as the one he saw near the Jackson house on the day of the fire and also identified Lippert as the driver of the vehicle in question when presented with a photo line up.
 {¶ 41} Officer Ricker testified that he received a telephone call from Detective Bobby Grizzard of the Massillon Police Department stating that Bush had been seen that morning walking down his driveway with a gasoline can. The officer then proceeded to Bush's apartment and spoke with him. After being asked if he had any knowledge of the fire at the Jackson residence, Bush told Officer Ricker that he did and gave the officer a statement. Bush, according to the officer, stated that appellant had started the fire.
 {¶ 42} At the trial, Robert Gartner, an expert in the area of the origin of fires, opined that the fire at the Jackson house was intentionally set by human hands and that gasoline was used. *Page 9 
 {¶ 43} At the conclusion of the evidence and the end of deliberations, the jury, on June 19, 2007, found appellant guilty of all of the charges. Pursuant to an entry filed on June 25, 2007, appellant was sentenced to an aggregate prison sentence of ten (10) years.
 {¶ 44} Appellant now raises the following assignments of error on appeal:
 {¶ 45} "I. THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 46} "II. THE APPELLANT WAS DEPRIVED OF DUE PROCESS BY THE MISCONDUCT OF THE PROSECUTOR.
 {¶ 47} "III. THE TRIAL COURT COMMITTED PLAIN ERROR BY SHIFTING THE BURDEN OF PROOF FOR ONE OF THE COUNTS TO THE APPELLANT WHILE INSTRUCTING THE JURY, AND THE CURATIVE INSTRUCTION WAS INSUFFICIENT TO CURE THE ERROR.
 {¶ 48} "IV. THE TRIAL COURT COMMITTED ERROR BY ALLOWING THE STATE TO AMEND THE INDICTMENT TO INCLUDE AID AND ABET LANGUAGE WITHOUT AMENDING THE CHARGE TO REFLECT THE COMPLICITY."
 I {¶ 49} Appellant, in his first assignment of error, argues that his convictions for aggravated arson are against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 50} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when *Page 10 
reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
at paragraph two of the syllabus, superseded by constitutional amendment on other grounds in State v. Smith, 80 Ohio St.3d 89, 1997-Ohio-355,684 N.E.2d 668.
 {¶ 51} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, 678 N .E.2d 541 superseded by constitutional amendment on other grounds as stated by State v. Smith,80 Ohio St.3d 89, 1997-Ohio-355, 684 N .E.2d 668, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 52} Appellant, in the case sub judice, was convicted of aggravated arson in violation of R.C. 2909.02(A)(1) and (A)(2). R.C. 2909.02
states, in relevant part, as *Page 11 
follows: (A) No person, by means of fire or explosion, shall knowingly do any of the following:
 {¶ 53} "(1) Create a substantial risk of serious physical harm to any person other than the offender;
 {¶ 54} "(2) Cause physical harm to any occupied structure; . . .
 {¶ 55} "(B)(1) Whoever violates this section is guilty of aggravated arson
 {¶ 56} "(2) A violation of division (A)(1) or (3) of this section is a felony of the first degree.
 {¶ 57} "(3) A violation of division (A)(2) of this section is a felony of the second degree."
 {¶ 58} Appellant specifically argues that the State of Ohio failed to submit sufficient evidence to meet the burden of proof beyond a reasonable doubt because none of the independent witnesses linked appellant to the incident. Appellant notes that the only witnesses who did link appellant, namely, Bush and Lippert, were themselves guilty of the crimes at issue and that such witnesses had motives to lie.
 {¶ 59} As is stated above, Brandon Isner identified Lippert's car as the car that he saw in front of the Jackson house at the time of the fire and also identified Lippert as the driver of the car. Victoria Herring identified Zachary Bush, her neighbor, as the person who was seen carrying a gasoline container down his driveway that morning. When both Lippert and Bush, appellant's accomplices, were independently questioned by the police, they both identified appellant as the person who had started the fire. We note that one accomplice may corroborate the testimony of another. See State v. Tyler (1990), 50 Ohio St.3d 24,33, 553 N.E.2d 576, 589, superseded by constitutional *Page 12 
amendment in part on other grounds State v. Smith 80 Ohio St.3d 89, 103,1997-Ohio-355, 684 N.E.2d 668, 684, at fn. 4. (Citations omitted). In addition to testimony concerning damage to the Jackson house, a neighbor testified that his house also was damaged by the fire.
 {¶ 60} Based on the foregoing, we find that any rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found that appellant intentionally set fire to the Jackson house while Donna Jackson and her son were inside and that the fire damaged the Jackson house as well as a neighboring house. Moreover, we find that the jury did not lose its way in convicting appellant. While appellant argues that Bush and Lippert were not credible, the jury, as trier of fact, was in the best position to assess their credibility. The jury, who heard detailed testimony about the deals that both made with the State and also heard testimony that Lippert blamed Tyler Ahmed for his father's imprisonment, found their version of events to be credible.
 {¶ 61} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 62} Appellant, in his second assignment of error, argues that he was deprived of due process of law by prosecutorial misconduct.
 {¶ 63} The Supreme Court of Ohio has limited the instances when a judgment may be reversed on grounds of prosecutorial misconduct. SeeState v. Lott (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293, 300. The analysis of cases alleging prosecutorial misconduct focuses on the fairness of the trial and not the culpability of the prosecutor.Id. A reviewing court is to consider the trial record as a whole and is to ignore harmless errors "including most constitutional violations."United States v. Hasting (1983), *Page 13 461 U.S. 499, 508-509, 103 S.Ct. 1974, 76 L.Ed.2d 96. Accordingly, a judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial. State v.Carter, 72 Ohio St.3d 545, 557, 1995-Ohio-104, 651 N.E.2d 965, 976-977.
 {¶ 64} A prosecutor is at liberty to prosecute with earnestness and vigor, striking hard blows, but may not strike foul ones. Berger v.United States (1935), 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314. "In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a reviewing court must determine if the remarks were improper, and, if so, whether they actually prejudiced the substantial rights of the defendant." State v. Overholt, Medina App. No. 02CA0108-M, 2003-Ohio-3500, at paragraph 47, citing State v. Smith
(1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883. "Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." State v. Hill (1996), 75 Ohio St.3d 195, 204,661 N.E.2d 1068, 1078, citing Donnelly v. DeChristoforo (1974),416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431. Furthermore, the appellant must show that there is a reasonable probability that but for the prosecutor's misconduct, the result of the proceeding would have been different. State v. Loza (1994), 71 Ohio St.3d 61, 78,641 N.E.2d 1082, 1101, overruled on other grounds.
 {¶ 65} Appellant did not object to the comments to which he now claims error. Therefore, for those instances, we must find plain error in order to reverse. Plain error is an obvious error or defect in the trial court proceedings, affecting substantial rights, which, "but for the error, the outcome of the trial court clearly would have been *Page 14 
otherwise." See Crim. R. 52(B); State v. Underwood (1983),3 Ohio St.3d 12, 14, 444 N.E.2d 1332.
 {¶ 66} Appellant initially takes issue with the prosecutor's statement during opening arguments that the charges in this case resulted from "good, solid detective work." Opening argument is not evidence, but is intended to advise the jury what counsel expects the evidence to show.State v. Turner (1993), 91 Ohio App.3d 153, 631 N.E.2d 1117. Therefore, the prosecutor and defense counsel may, in good faith, make statements as to what he or she expects the evidence will show. State v.Colley (1946), 78 Ohio App. 425, 427, 65 N.E.2d 159.
 {¶ 67} We find that such remark, even if improper, was not so prejudicial as to deprive appellant of a fair trial. Moreover, we note that the trial court advised the jurors that opening statements were not evidence. See, State v. Jalowiec (2001), 91 Ohio St.3d 220, 226,744 N.E.2d 163, recon. den., (2001), 91 Ohio St.3d 1530, 747 N.E.2d 254.
 {¶ 68} Appellant next challenges the prosecutor's statement during closing arguments that "they [Bush and Lippert] told you the truth." Transcript at 292.
 {¶ 69} Counsel is afforded wide latitude during closing argument to present the most convincing position on behalf of his or her client.State v. Stephens (1970), 24 Ohio St.2d 76, 82, 263 N.E.2d 773. It is proper for the prosecution to comment on the evidence in closing argument and to state the appropriate conclusions to be drawn therefrom.State v. Draughn (1992), 76 Ohio App.3d 664, 670, 602 N.E.2d 790. The prosecution may urge its theory of what the evidence indicates, so long as it does not *Page 15 
mislead the jury. State v. Malone (Sept. 24, 1986), Summit App. Nos. 12533 12542, 1986 WL 10586, at *2.
 {¶ 70} Upon our review of the entire record in this matter, we find that appellant's substantial rights were not prejudicially affected by this isolated comment concerning the credibility of Bush and Lippert. The comment was made during the prosecutor's rebuttal to appellant's closing argument, during which appellant's trial counsel stated that Bush and Lippert were liars who were motivated by self interest. Also, the trial court advised the jury that closing arguments were not evidence. See, for example, State v. Brown, Stark App. No. 2005CA00094,2006-Ohio-826.[1]
 {¶ 71} Appellant next challenges the State's argument in closing that "No one is asking you to consult Robert Lippert or Zachary Bush on the new home you want to buy or asking you to rely on them to get surgery." Transcript at 291. Appellant specifically contends that such argument was improper in view of the fact that the State questioned the jurors as to reasonable doubt using the same examples. Appellant notes that the State asked the jurors, during voir dire, if they owned homes and asked one juror if he could be absolutely certain that the work of the contractor who built his house was free from defect. Appellant further points to the State's questioning the jurors about what they would consider when determining whether or not to have surgery and whether or *Page 16 
not they could be absolutely sure of their decision. Appellant also points to the following statement made by the State in opening statements:
 {¶ 72} "MR. SCOTT: What Juror 36 and Juror 9 helped me illustrate is the concept of beyond a reasonable doubt and reasonable doubt. Who thinks the State of Ohio can prove something to you beyond all doubt? State cannot. Our burden is a very high one. Beyond a reasonable doubt. But the judge will tell you at the conclusion of the case a reasonable doubt, beyond a reasonable doubt is reached when you'd make a decision that you would in one of the most important affairs of your own life. Juror 36 was building a house. One of the most important things. It's evidence that you would be firmly convinced of." Transcript at 33.
 {¶ 73} According to appellant, "[t]hese particular questions were designed to illustrate the concept of beyond a reasonable doubt . . . Then, in closing argument the State utilized the exact same examples in a negative way indicating that the determination of guilt or innocence was not the same as relying on the State's two flawed key witnesses to decide whether or not they would have surgery." Appellant, in support of his argument, further notes that the trial court instructed the jury that the definition of beyond a reasonable doubt was "proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his or her own affairs." Transcript at 297.
 {¶ 74} However, we find that such statements were not unduly prejudicial. We note that the prosecution made such statement in response to the following statements made by defense counsel in closing: "I'd submit to you folks what this case boils down to is this: Would you rely and act upon the word of Zachary Bush? Would you rely and *Page 17 
act upon the word of Robert Lippert? Would you be willing to decide the most important of your own affairs? The answer would have to be no. If Bush and Lippert came in and said the sun is shining outside, you'd probably walk to the window and look to make sure. Would you act and rely upon their word in the most important of your own affairs? Clearly you wouldn't without any other evidence in this case to support their testimony." Transcript at 290. What the State appears to have been trying to point out in response to appellant's closing argument was that the question the jurors had to answer was not whether each of them would rely on the advice of Lippert and Bush to buy a home or have surgery, but whether the testimony of Lippert and Bush and the other evidence in the case would convince each of them beyond a reasonable doubt of the defendant's guilt of the criminal acts alleged.
 {¶ 75} Even if the statements of the prosecutor were confusing to the jury, the jury was properly instructed by the trial court on the definition of reasonable doubt. A jury is presumed to follow the instructions of the trial court. See State v. Loza (1994),71 Ohio St.3d 61, 641 N.E.2d 1082.
 {¶ 76} Appellant's second assignment of error is, therefore, overruled.
 III {¶ 77} Appellant, in his third assignment of error, argues that the trial court committed plain error in instructing the jury. We disagree.
 {¶ 78} In the case sub judice, the trial court originally instructed the jury, with respect to count three, as follows:
 {¶ 79} "If you find that the State proved beyond a reasonable doubt all essential elements of this offense of aggravated arson, your verdict must be guilty as to that *Page 18 
offense. If you find that the Defendant failed to prove beyond a reasonable doubt any one of the essential elements of the offense of aggravated arson, your verdict must be not guilty as to such offense." Transcript at 306. (Emphasis added).
 {¶ 80} After being advised by defense counsel that the trial court had misspoken by shifting the burden of proof to appellant, the trial court gave the following instruction to the jury:
 {¶ 81} "THE COURT: So if you will turn back to page 12. I may have misspoken and if I did, it is the first mistake I have ever made. But I should have said to you with respect to Count Three after having advised you that if you find the State proved beyond a reasonable doubt all the essential elements of the charge of aggravated arson your verdict must be guilty of that offense. I should have said to you if you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of the offense of aggravated arson, your verdict must be not guilty as to such offense. If I mispoke (sic), you are to be corrected by my correction." Transcript at 317-318.
 {¶ 82} While appellant maintains that the trial court's curative instruction was insufficient to cure its error, we note that it is presumed the jury followed the court's instructions when deliberating.State v. Loza (1994), 71 Ohio St.3d 61, 641 N.E.2d 1082. Thus, any possible prejudice to appellant was relieved by the curative instruction. Moreover, we note that, with respect to the other five charges, the trial court, during its original instructions, properly instructed the jury that the burden of proof was on the State.
 {¶ 83} Appellant's third assignment of error is, therefore, overruled. *Page 19 
 IV {¶ 84} Appellant, in his fourth and final assignment of error, argues that the trial court erred by allowing the State to amend the indictment to include aid and abet language. We disagree.
 {¶ 85} Because appellee did not object to the amendment of the incitement, we must apply a plain error analysis. Plain error is an obvious error or defect in the trial court proceedings, affecting substantial rights, which, "but for the error, the outcome of the trial court clearly would have been otherwise." See Crim. R. 52(B); State v.Underwood (1983), 3 Ohio St.3d 12, 13, 444 N.E.2d 1332
 {¶ 86} The indictment in this case alleged, with respect to counts one and two, that appellant, on or about February 24, 2007, did by means of fire or explosion, knowingly create a substantial risk of serious physical harm to Donna Jackson and her son, Tyler Ahmed. On June 14, 2007, appellee filed a Motion to Amend the Indictment, asking the trial court to amend counts one and two to include the following language: "and/or did aid or abet another in so doing." The motion was granted on the same day.
 {¶ 87} A trial court's decision allowing an amendment that changes the name or identity of the offense charged constitutes reversible error regardless of whether the accused can demonstrate prejudice. State v.Honeycutt, Montgomery App. No. 19004, 2002-Ohio-3490. When an amendment is allowed that does not change the name or identity of the offense charged, the accused is entitled to a discharge of the jury or a continuance, "unless it clearly appears from the whole of the proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made." Id., quoting Crim. R. 7(D). *Page 20 
 {¶ 88} A trial court's decision to permit the amendment of an indictment is reviewed under an abuse of discretion standard. State v.Beach, 148 Ohio App.3d 181, 2002-Ohio-2759, 772 N.E.2d 677, at ¶ 23, appeal not allowed, 96 Ohio St.3d 1516, 2002-Ohio-4950. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157,404 N.E.2d 144. To demonstrate error, defendant must show not only that the trial court abused its discretion, but that the amendment prejudiced his defense. Id.
 {¶ 89} Appellant specifically contends that the trial court erred in allowing the amendment because the indictment was not amended to include the aiding and abetting statute and because R.C. 2909.02, the arson statute, does not include aid and abet language.
 {¶ 90} Pursuant to R.C. 2923.03(F), a charge of complicity may be stated in terms of R.C. 2923.03 or in terms of the principal offense.State v. Caldwell (1984), 19 Ohio App.3d 104, 483 N.E.2d 187. Where one is charged in terms of the principal offense, he or she is on notice, by operation of R.C. 2923.03(F), that evidence could be presented that the defendant was either a principal or an aider and abettor for that offense. See State v. Dotson (1987), 35 Ohio App.3d 135, 520 N.E.2d 24. In State v. Koontz (1979), 65 Ohio App.2d 264, 417 N.E.2d 1272, the court held that by amending an indictment to include aiding and abetting the same criminal conduct originally charged, the trial court did not change the name or identity of the crime charged. *Page 21 
 {¶ 91} As noted by appellee, because the original indictment stated the principal offense of aggravated arson, "there was no evidence that [appellant] was surprised or prejudiced by amendment to include the language to aid or abet." Moreover, we note that when the evidence adduced at trial could reasonably be found to have proven a defendant guilty as an aider and abettor, a trial court acts properly in giving an aiding and abetting instruction. See State v. Perryman 91976),49 Ohio St.2d 14, 358 N.E.2d 1040. Thus, the indictment could have been amended at trial to include a charge of complicity if warranted by the evidence.
 {¶ 92} Appellant's fourth assignment of error is, therefore, overruled.
 {¶ 93} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
 By: Edwards, J. Wise, P.J. and Delaney, J. concur *Page 22 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] In Brown, this Court held that a prosecutor's statement during closing arguments that he thought a witness was "totally credible" did not constitute plain error or deny the defendant of a fair trial. This Court, in Brown, stated, in relevant part, as follows: "Upon review of the entire record in this matter, we find appellant's substantial rights were not prejudicially affected by this isolated comment. The comment was made during the prosecutor's rebuttal to appellant's closing argument, during which appellant's trial counsel repeatedly emphasized the alleged discrepancies between the testimony of the victim and the other witnesses. Also, the trial court, on at least two occasions between closing arguments and charging the jury, advised the jury closing arguments were not evidence and should not be treated as evidence." Id. at paragraph 17. *Page 1