[Cite as *State v. DeWitt*, 2010-Ohio-4777.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 09 MA 68 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| CHRISTOPHER DeWITT, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:     Criminal Appeal from Common Pleas
                             Court, Case No. 09 CR 204.


JUDGMENT:                     Affirmed.


APPEARANCES:
For Plaintiff-Appellee:        Attorney Paul J. Gains
                             Prosecuting Attorney
                             Attorney Ralph M. Rivera
                             Assistant Prosecuting Attorney
                             21 W. Boardman St., 6th Floor
                             Youngstown, OH  44503


For Defendant-Appellant:       Attorney Aaron Snopek
                             P.O. Box 338
                             Mantua, OH  44255


JUDGES:
Hon. Mary DeGenaro
Hon. Joseph J. Vukovich
Hon. Gene Donofrio


                                      Dated:  September 24, 2010

DeGenaro, J.

{¶1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Appellant, Christopher DeWitt appeals the April 2, 2009 decision of the Mahoning County Court of Common Pleas that imposed a sentence of twenty years subsequent to a jury finding of guilty on two counts of rape, in violation of R.C 2907.02(A)(1)(c).

{¶2} DeWitt argues that the trial court abused its discretion by allowing the State to alter the date range of one of the rape offenses by ten days. DeWitt also argues that the trial court deprived DeWitt of a fair trial by preventing DeWitt from presenting the testimony of three particular witnesses at trial.

{¶3} We find that the trial court acted within its discretion when it allowed the State's amendment to the indictment. The trial court's decision to exclude two witnesses solely for violating the separation order was erroneous, but did not prejudice DeWitt. Further, the unavailability of the third witness was not brought to the attention of the trial court. Accordingly, the judgment of the trial court is affirmed.

### Facts and Procedural History

{¶4} On February 26, 2009, DeWitt was indicted on four counts of rape. Counts One and Two were against victim B.M., age 16, and were alleged to have occurred on or about July 19, 2008. Counts Three and Four were against victim L.C., age 17, and were alleged to have occurred on or about between July 1 and July 31, 2008.

{¶5} On March 23, 2009, the State filed a bill of particulars, in which the State alleged that DeWitt committed each of the charged counts by removing the victim's clothing and digitally penetrating her vagina without her consent while she was asleep. The State included the same dates that had been indicated in the indictment.

{¶6} On March 25, 2009, the trial court overruled DeWitt's motion to dismiss the indictment for lack of specificity, and granted DeWitt's motion in limine to exclude other-acts evidence, although the motions themselves were not provided in the record before this Court. On March 26, 2009, DeWitt filed a notice of intent to introduce alibi evidence

at trial, alleging that he was at a hospital in Cleveland, Ohio with his son during the entirety of the weekend surrounding July 19, 2008.

{¶7} The trial took place on March 30, 2009. Prior to the entry of the jury, both parties orally moved for a separation of witnesses, which the trial court sustained. The trial court instructed: "So the court will order a separation of witnesses, and each party is responsible to separate your own. The court warns you that if your witnesses are not separated, if they sit through testimony, I will disallow their presentation. So make sure you separate your own witnesses." The defense also requested agreement from the State to redact certain references to other acts committed by DeWitt, which were mentioned in the initial police reports taken from each victim. Defendant's Exhibit 1 included the statement "Michelle stated that C. DeWitt has a history of sexual assaults on children." Defendant's Exhibit 2 included the statement that both victims "are concerned that [A.S.] may also be a victim of abuse by the suspect." The State did not agree to redact the documents.

{¶8} The State presented the testimony of L.C.; Christine, L.C.'s mother; Anthony Harris, the police officer who was belatedly assigned to investigate DeWitt's case; Michelle, B.M.'s mother; and B.M. The defense presented the testimony of Samuel Mosca, the police officer who wrote the incident report for B.M.; K.D. and C.D., DeWitt's sons; and K.S. and A.S., DeWitt's stepdaughters. The State additionally presented the rebuttal testimony of Steven Dunlap, DeWitt's manager at his place of employment.

{¶9} L.C. testified that she is DeWitt's niece, that she is good friends with A.S., and that she frequently slept over at DeWitt's house. One night around the end of June or beginning of July of 2008, L.C. arrived at DeWitt's house with plans to sleep over with A.S.. DeWitt and his wife were not at home at the time. L.C. fell asleep on DeWitt's couch and was awoken at approximately 4:30 a.m., finding DeWitt sitting next to her with his hands down her pants and his fingers inserted into her vagina. When L.C. opened her eyes and jumped away, DeWitt pretended that he was asleep. L.C. eventually told B.M. about the incident via a text message, which L.C.'s older relatives discovered. L.C.'s family then called the police.

{¶10} On cross-examination, L.C. stated that the incident occurred around the end of June or beginning of July, 2008. Defense asked L.C. about her report to the police on August 8, 2008, and asked L.C. if she had reported that the incident occurred on July 21, 2008 at 9:30 a.m. L.C. responded that she did not remember the date that she went to the police, and denied reporting that the incident occurred on July 21, 2008 at 9:30 a.m. Christine, L.C.'s mother, testified briefly about changes that she noticed in L.C.'s behavior between the incident and L.C.'s reporting of the incident.

{¶11} Officer Anthony Harris testified that he was a juvenile investigator who was assigned to DeWitt's case after the original investigator, Suzanne Ellis, went on sick leave. When Harris was assigned to the case on August 25, 2008, Ellis had already completed a substantial portion of the investigation, including taking statements from the victims, talking with family members, and interacting with Children Services and BCI. Harris stated that Ellis was still on sick leave at the time of trial, and was unavailable to testify.

{¶12} On cross-examination, Harris testified that Defendant's Exhibit 1 was an initial police report regarding B.M., prepared by Officer Mosca. Harris verified that Defendant's Exhibit 2 was an initial police report regarding L.C., prepared by Officer Ellis. Harris testified that these reports stated that the incident regarding B.M. was reported as occurring on July 19, 2008, and the incident regarding L.C. was reported as occurring on July 21, 2008.

{¶13} Michelle testified that B.M. had spent the night with A.S. at DeWitt's residence on July 18, 2008, and that B.M. reported the incident to her on the night of July 19, 2008. Michelle stated that she took B.M. to the police, and the police came to the house to retrieve B.M.'s clothing at some later point.

{¶14} B.M. testified that she is good friends with both L.C. and A.S., and that she very frequently spent nights at DeWitt's residence. On the night of July 18, 2008 through July 19, 2008, B.M. stayed up late with the other children at the house, and went to sleep at approximately 5:00 or 6:00 a.m., at which point DeWitt was sleeping on the couch. At approximately 9:30 a.m. on July 19, 2008, B.M. awoke to find DeWitt standing over her in

bed, with B.M.'s shirt and bra pushed up, her pants down below her knees, and with DeWitt's fingers inserted in her vagina. When B.M. opened her eyes, DeWitt quickly turned around and began picking hangers up off of the floor. B.M. reported the incident to her parents on the evening of July 19, 2008.

{¶15} On cross-examination, B.M. admitted that she initially reported to the police that DeWitt did not penetrate her, and that DeWitt had been lying next to her rather than standing over her. B.M. stated on redirect examination that she felt DeWitt next to her in bed when she first woke, but that DeWitt was standing next to the bed by the time she had opened her eyes. B.M. also stated that, at the time she made the report, she thought that the meaning of rape or penetration only involved penile penetration, not digital penetration.

{¶16} The State rested and then moved to amend the indictment based on the testimony of L.C. The State requested that the date range for offenses alleged against L.C. change from July 1 through July 31, 2008, to June 20 through July 20, 2008. DeWitt objected, noting that he had asked for specific dates in the bill of particulars, and that the vagueness of the dates prevented him from creating an alibi. The trial court noted that it is difficult to provide alibi evidence when a large date range is involved. However, the trial court also noted that the law allows for a date range in the indictment, and that the State is not required to prove the exact date of the offense, and allowed the amendment.

{¶17} Prior to the defense's case in chief, the State noted that DeWitt requested to recall one of the State's witnesses, Michelle. However, after Michelle finished testifying for the State, she had remained in the courtroom and observed other witness testimony. The trial court noted that he had already stated that he would not allow witnesses to testify in violation of the separation order that both parties had requested. The defense stated that it had no response to the State's objection. The trial court sustained the State's objection, and Michelle was not permitted to testify.

{¶18} For his case in chief, DeWitt first presented the testimony of Officer Samuel Mosca. Mosca verified that he authored the police report for B.M. on July 20, 2008, and that Exhibit 1 was an accurate copy of that report. The trial court sustained an objection

to DeWitt's questions regarding B.M.'s statements to Mosca.

{¶19} K.D. testified that L.C. and B.M. had each spent the night at DeWitt's residence in the past, but that B.M. did not come to DeWitt's house very often in July of 2008. C.D. had been in the hospital in Cleveland during the entirety of July, 2008, and K.D.'s mother spent most of her time at the hospital, and that DeWitt also went to the hospital almost every weekend. K.D. also stated that DeWitt worked on the weekends except for Sundays.

{¶20} K.S. testified that B.M. and L.C. often slept over at DeWitt's house. K.S. testified that L.C. had disclosed the incident to her around the end of July or beginning of August, and that L.C. had stated that DeWitt attempted to digitally penetrate her anus. K.S. testified that DeWitt visited C.D. at the hospital during the weekends, and that he was not usually around the home during weekends.

{¶21} A.S. testified that B.M. spent the night with her at DeWitt's house on the night of July 18, 2008, and that DeWitt was at the hospital with C.D. that entire weekend.

{¶22} C.D. testified that he was in the hospital for approximately one month around July of 2008, and that he took some medication that had some effect on his memory. C.D. testified that his mother stayed with him at the hospital, and that DeWitt was with him during some or most weekends.

{¶23} During a recess, the trial court and counsel discussed the defense's request to present the testimony of a Children Services employee, Stacey Montalvo. Montalvo was personally known to the prosecution, but not to the defense, thus the defense was not aware that Montalvo was in the courtroom during other witness testimony, until the prosecution indicated to the defense that she was present. The trial court noted that it was obligated to consistently enforce the witness separation order. DeWitt argued that he wanted to use Montalvo as an impeachment witness, because Montalvo's report states that Michelle indicated that B.M. told her certain details about the incident that contradicted B.M.'s testimony. The trial court noted that Montalvo's testimony about what Michelle said that B.M. said would clearly be inadmissible as hearsay. The trial court further noted that the defense could have cross-examined both B.M. and Michelle about

the statements in the report, but failed to do so. The defense then proffered that he intended to ask Montalvo whether B.M. was present when Michelle made statements to Montalvo, and also whether B.M. actually personally stated the reported statements to Michelle in Montalvo's presence, or if Montalvo's written statements were only those uttered by Michelle.

{¶24} The defense rested, and offered three exhibits. The first exhibit, Mosca's police report of the incident with B.M., was admitted over the State's objection. The second exhibit, Ellis's police report of the incident with L.C., was not admitted. The third exhibit, Montalvo's report from Children Services, was not admitted because it was not properly authenticated. The defense then withdrew its notice of alibi, and moved for acquittal on Counts Two and Four, for failure to provide evidence of force or threat of force, which the trial court later denied.

{¶25} The State presented a rebuttal witness, Steven Dunlap, who was DeWitt's employer. Dunlap testified that DeWitt was at work from 2:45 p.m. on Friday, July 18, 2008, until 3:08 a.m. on Saturday, July 19, 2008. DeWitt also worked from 2:44 p.m. to 11:01 p.m. on Saturday, July 19, 2008.

{¶26} On March 31, 2009, after four hours of deliberations, the jury returned verdicts of guilty on Counts One through Three, and a verdict of not guilty on Count Four. The trial court entered judgment on April 2, 2009. On April 6, 2009, the trial court filed a judgment entry of sentence. The trial court sustained the State's motion to dismiss Count Two, as it was charged in the alternative to Count One. The trial court stated that it had considered the record, the statements presented by the parties, the purposes and principles of sentencing pursuant to R.C. 2929.11, as well as the seriousness and recidivism factors of R.C. 2929.12. The trial court imposed a ten year sentence on Count One, a ten year sentence on Count Three, and ordered that the two sentences run consecutively, for a total of twenty years.

## Amendment of Indictment

{¶27} In his first of two assignments of error, Dewitt asserts:

{¶28} "The trial court erred and abused its discretion when the trial court permitted

the State to amend the indictment to alter the time frame within which the alleged offense against [ L.C. ] was committed thereby denying the Appellant his due process rights under the United States Constitution and under the Ohio Constitution."

**{¶29}** DeWitt presents two arguments: (1) that the date range of thirty days in Count Three of the indictment is overly vague to the point of denying DeWitt his right to due process; and, (2) that the trial court abused its discretion and committed prejudicial error by allowing a mid-trial amendment of the indictment to reflect a different date range for Count Three, rendering DeWitt unable to prepare any defense for the new dates alleged.

**{¶30}** In DeWitt's original indictment, he was accused of raping L.C. in violation of R.C. 2907.02(A)(1)(c) "on or about between July 1 and July 31, 2008." In the amended indictment, the offense was alleged to have occurred on or about between June 20 and July 20, 2008.

**{¶31}** As for the first argument, a defendant is entitled to an indictment that states "all material facts constituting the essential elements of an offense," so that the "accused is afforded with adequate notice and an opportunity to defend." *State v. Sellards* (1985), 17 Ohio St.3d 169, 170, 17 OBR 410, 478 N.E.2d 781. An indictment "is sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified." R.C. 2941.05. Further, an indictment need only allege that "the offense was committed at some time prior to the time" that the indictment was filed. R.C. 2941.03(E). An indictment is not invalid merely because the time of the offense is stated imperfectly. R.C. 2941.08(C). Thus, an indictment does not need to state a specific date of the offense when the date and time is not an element of the offense. *Sellards* at 170-171.

**{¶32}** Additionally, a bill of particulars supplied by the State need not necessarily provide specific dates and times. The limited purpose of a bill of particulars is "to elucidate or particularize the conduct of the accused alleged to constitute the charged offense," but not "to provide the accused with specifications of evidence or to serve as a substitute for discovery." *Sellards* at 171. Thus, a bill of particulars generally does not

need to list a specific date and time, because this information only describes when certain conduct may have occurred and does not describe the conduct itself.  Id.

{¶33}  The offense charged against DeWitt in Count Three was rape, in violation of R.C. 2907.02(A)(1)(c).  "No person shall engage in sexual conduct with another who is not the spouse of the offender [when] * * * (c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age."  Id.

{¶34}  Pursuant to this language, date and time are not included in the elements of the count of rape charged against DeWitt in Count Three.  "Because the precise date and time of the offense of rape are not essential elements of that crime, a certain degree of inexactitude in averring the date of the offense is not necessarily fatal to its prosecution." *State v. Haschenburger*, 7th Dist. No. 05 MA 192, 2007-Ohio-1562, at ¶81, quoting *State v. Krzywkowski,* 8th Dist. No. 80392, 2002-Ohio-4438.

{¶35}  Further, the testimony of L.C. indicated that she frequently spent the night at DeWitt's house, and was unable to remember the specific date that the offense occurred. The testimony of the defense witnesses also indicated that L.C. frequently spent time at DeWitt's home, and often fell asleep on the couch at DeWitt's home.  The testimony offered indicates that an inexact date was appropriate for the indictment.

{¶36}  Although the alleged vagueness of the thirty day span is not per se prejudicial, the State is still obligated to exercise good faith and "must, in response to a bill of particulars or demand for discovery, supply specific dates and times with regard to an alleged offense where it possesses such information."  *Sellards* at 171.  In addition, a reviewing court should also "evaluate whether the lack of specific information caused a material detriment to the preparation of a defense."  *State v. Alicea*, 7th Dist. No. 99 CA 36, 2002-Ohio-6907, at ¶8, citing *Sellards* at 172.

{¶37}  For example, in *State v. Lawrinson* (1990), 49 Ohio St.3d 238, 551 N.E.2d 1261, the indictment and bill of particulars included a one-month date range for the

defendant's offense, but multiple police reports and witness testimony at trial all consistently pointed to a few specific days within that range. Id. at 239. Thus, the State had specific information, and the opinion indicates that such information was not supplied to the defense. Additionally, the defendant-appellant stood "ready to submit affidavits and other evidence from his employers supporting the assertion that he can account for much of his time during the week in question." Id. Thus, the defendant demonstrated that the information was material to a defense theory that he was ready to put forth. The Ohio Supreme Court remanded the issue with instructions to provide Lawrinson with a bill of particulars identifying that particular week.

{¶38} DeWitt argues that the State failed to exercise its good faith duties, because it did possess information regarding specific dates and failed to supply it to DeWitt. DeWitt seems to argue that the police report regarding L.C. stated that the incident was reported to have occurred on July 21, 2008, and thus that the State was aware of a more specific date of the offense, requiring the State to disclose this information and to narrow the date range. However, as demonstrated by L.C.'s testimony, the State was faced with other evidence that the date of the offense was uncertain. L.C. also specifically denied having reported that the incident occurred on July 21, 2008. Further, the State's amended dates of June 20 through July 20, 2008 for Count Three make it clear that the State did not consider the police report's reference to July 21, 2008 to be dependable evidence. Thus the State did not possess such consistent proof of a more specific date range as the State did in *Lawrinson*. Moreover, the referenced police report was made available to DeWitt during discovery, the date of July 21, 2008 was within the date range supplied by the original indictment, and despite having notice of this information, DeWitt failed to present any alibi or other evidence addressing that particular date.

{¶39} In summary, the time and date is not an element of the rape offense charged in DeWitt's indictment, the State did not possess the requisite information to provide a more specific date range in the indictment, any information that the State did possess referring to dates was in fact supplied to DeWitt, and DeWitt does not demonstrate that such information materially prejudiced the preparation of his defense.

Accordingly this argument is meritless.

**{¶40}** Secondly, DeWitt argues that the trial court committed an abuse of discretion by granting the State's mid-trial motion to amend the indictment. The amendment changed the date range in Count Three from "on or about between July 1 and July 31, 2008," to on or about between June 20 and July 20, 2008.

**{¶41}** Crim.R. 7(D) allows a trial court to amend an indictment to conform to the evidence presented at trial. See, e.g., *State v. Curenton* (Oct. 6, 1998), 7th Dist. No. 96-JE-19, at *2. Crim.R. 7(D) provides that a court may permit the amendment of an indictment at any time, as long as it does not change the name or identity of the crime charged. A change in the name or identity of an offense may occur when, for example, the amendment includes new elements requiring independent proof, or when the amendment increases the severity of the offense. See *State v. Fairbanks*, 172 Ohio App.3d 766, 2007-Ohio-4117, 876 N.E.2d 1293, at ¶19-21 (12th Dist.).

**{¶42}** Where the amendment does not change the name or identity of the offense, a reviewing court should not disturb a court's decision to permit the amendment of an indictment absent an abuse of discretion and a showing of prejudice to the defense. See *State v. Douglas*, 10th Dist. No. 09AP-111, 2009-Ohio-6659, at ¶33; *State v. Gibson*, 5th Dist. No. 2007 CA 00209, 2008-Ohio-3936, at ¶88; *State v. Beach*, 148 Ohio App.3d 181, 2002-Ohio-2759, 772 N.E.2d 677, at ¶23 (1st Dist.). An abuse of discretion connotes more than an error of law or judgment; it implies an attitude on the part of the court that is unreasonable, arbitrary or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

**{¶43}** The amendment to DeWitt's indictment, shifting the date range of Count Three by ten days, did not change the language, elements, or felony degree of DeWitt's offense. By changing the dates, the amendment only changed the circumstances alleged to have surrounded DeWitt's offense, and did not change the nature of the offense charged. Thus, DeWitt would have to demonstrate that the trial court abused its discretion in allowing the amendment, and that he was prejudiced as a result.

**{¶44}** The State's evidence supported the amended dates of June 20 to July 20,

2008 in the indictment, given that L.C. testified that DeWitt's offense occurred around the end of June or beginning of July, 2008. The trial court seems to have decided that shifting the dates in Count Three by ten days was reasonable in light of the overall range of thirty days. The trial court's decision was reasonable in light of the inexactitude permitted, especially in the context of a rape of a minor who frequently spends time with the offender. *Alicea* at ¶9. However, DeWitt contends that the trial court's decision was both an abuse of discretion and prejudicial because DeWitt had been given no notice of the additional new dates of June 20 through June 30, 2008, and thus had been given no opportunity to prepare an alibi defense for those dates.

**{¶45}** Although DeWitt attempted to present an alibi defense for one of the days included in Count Three of the indictment, DeWitt withdrew his alibi defense, and Dunlap's testimony regarding DeWitt's presence at work completely contradicted defense witness claims that DeWitt had been in Cleveland on July 19, 2008. Because DeWitt ended up not presenting any alibi defense, his remaining defense at trial was simply the argument that the alleged incidents did not happen, and that the two victims concocted the story. Given this defense, a change in dates would not have any prejudicial effect.

**{¶46}** Finally, unlike the defendant in *Lawrinson*, DeWitt has not even claimed that he now has an alibi for the dates of June 20 to June 30, 2008. DeWitt only claims that he could have hypothetically presented an alibi defense, had he been given notice. DeWitt's claim of prejudice is thus speculative and not sufficient to support the conclusion that he was prejudiced by the change in dates.

**{¶47}** Given the foregoing, the trial court did not abuse its discretion when it sustained the State's motion to amend the indictment regarding Count Three, and DeWitt did not suffer prejudice from the shift in the dates or the thirty-day date range, and this argument is meritless.

### Prevention of Defense Witness Testimony

**{¶48}** In his second assignment of error, Dewitt asserts:

**{¶49}** "The trial court erred by denying the Appellant his fundamental constitutional rights, under the United States Constitution and the Ohio Constitution, to a

fair trial."

**{¶50}** DeWitt contends that the trial court violated his right to a fair trial because DeWitt was not able to present the testimony of three particular witnesses: Suzanne Ellis, Michelle, and Stacey Montalvo.

**{¶51}** As for Suzanne Ellis, DeWitt argues that plain error was committed by the absence of her testimony. The record indicates that Ellis was on sick leave at the time of trial, and was unavailable to testify. DeWitt provides no legal support for his argument, apart from a general reference to the meaning of "plain error". A party asserting plain error bears the burden of showing "that (1) an error occurred, (2) the error was obvious, and (3) the error affected the outcome of the trial." *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, at ¶378; Crim.R. 52(B). DeWitt seems to argue that Ellis's failure to appear in compliance with the subpoena constituted an obvious defect in his proceedings, which affected the outcome of his trial because her absence prevented the admission of evidence that L.C. had originally reported DeWitt's offense as occurring on July 21, 2008.

**{¶52}** Ellis's absence proved to be problematic for DeWitt's defense, but not every disadvantage befalling a defendant constitutes error. Ellis's unavailability does not impute error to any decision that the trial court made during DeWitt's proceedings. There is nothing in the record to indicate that DeWitt brought Ellis's potential unavailability to the attention of the court. Thus, no obvious error occurred and DeWitt's first argument is meritless.

**{¶53}** As for Stacey Montalvo and Michelle, these witnesses were both excluded from testifying in DeWitt's case-in-chief due to their violation of the separation of witnesses order. DeWitt asserts that the trial court's exclusion of these two witnesses was erroneous because DeWitt did not know of the witness' violation of the order, and did not otherwise encourage such violation.

**{¶54}** A trial court has the authority to exclude witnesses from the courtroom during a hearing pursuant to Evid.R. 615:

**{¶55}** "(A) Except as provided in division (B) of this rule, at the request of a party

the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. An order directing the 'exclusion' or 'separation' of witnesses or the like, in general terms without specification of other or additional limitations, is effective only to require the exclusion of witnesses from the hearing during the testimony of other witnesses.

{¶56} "(B) This rule does not authorize exclusion of any of the following persons from the hearing:

{¶57} "(1) a party who is a natural person;

{¶58} "(2) an officer or employee of a party that is not a natural person designated as its representative by its attorney;

{¶59} "(3) a person whose presence is shown by a party to be essential to the presentation of the party's cause;

{¶60} "(4) in a criminal proceeding, a victim of the charged offense to the extent that the victim's presence is authorized by statute enacted by the General Assembly. As used in this rule, 'victim' has the same meaning as in the provisions of the Ohio Constitution providing rights for victims of crimes." Id.

{¶61} The purpose of separating witnesses is to prevent a witness from hearing the testimony of other witnesses, which serves to prevent that witness from altering his or her own testimony to support or undermine the prior testimony. See *State v. Waddy* (1992), 63 Ohio St.3d 424, 434, 588 N.E.2d 819, superseded by state constitutional amendment on other grounds; *State v. Hohvart*, 7th Dist. No. 06 MA 43, 2007-Ohio-5349, at ¶31.

{¶62} Normally, the exclusion of a witness should not be disturbed by a reviewing court absent an abuse of discretion. *State v. Smith* (1990), 49 Ohio St.3d 137, 142, 551 N.E.2d 190. However, in this specific context: "where the court seeks to exclude a witness for violating a separation order, there must be a showing that the party calling the witness consented to, connived in, procured or had knowledge of the witness' disobedience. Secondly, the testimony sought to be introduced must be important to the defense such that exclusion of the evidence constitutes prejudicial error." Id. See, also,

*Dickson v. State* (1883), 39 Ohio St. 73, 9 WLB 229, at paragraph one of the syllabus; *State v. Harris*, 7th Dist. No. 04 JE 44, 2006-Ohio-3520, at ¶103.

**{¶63}** Therefore, in order to conclude that a trial court's exclusion of a disobedient witness was proper pursuant to *Smith*, a reviewing court must either find that the defense encouraged or knew of the witness's violation, and if the defense did not, then it must find that the witness's exclusion caused no prejudice to the defendant. A reviewing court should also keep in mind that the preferred sanction for a separation order violation "is simply to allow the transgression to reflect upon the witness's credibility." *Hovhart* at ¶31, quoting *State v. Williams* (Oct. 16, 1998), 2d Dist. No. 97-CA-0131, citing *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1, citing *Dickson*.

**{¶64}** In *Dickson*, the trial court prohibited a defense witness from testifying because she had violated a separation order and had been present in the courtroom during some of the testimony of other defense witnesses. Id. at 76-77. Although the trial court did not find that the defense procured the witness's disobedience, the trial court nonetheless excluded the witness. Id. The defense intended to use her testimony to contradict a State witness's testimony regarding the defendant's whereabouts and statements before the alleged crime was committed. Id. As the trial progressed, the defense presented four other witnesses who testified as to the exact same information that was sought to be elicited from the excluded witness. Id. at 77. The Ohio Supreme Court held that the trial court did not have the discretion to exclude the defense witness where her violation was not by procurement of the defense. Id. at 78. Further, the exclusion of the witness was prejudicial in spite of the cumulative nature of her testimony, because the four other witness' character and credibility had been undermined during cross-examination. Id. at 77-78.

**{¶65}** In this case, it is uncontested that the trial court ordered a separation of witnesses pursuant to the request of both parties. Michelle testified as the penultimate witness for the State's case in chief. After Michelle completed her testimony, discussion on the record indicates that she remained in the courtroom during the presentation of B.M.'s testimony. DeWitt wished to recall Michelle to the stand, and the State objected

on the grounds that Michelle had violated the separation of witnesses order. The trial court responded: "Well, I'm afraid you did make that statement before we started, that each party was to separate your own witnesses. You each agreed to separate witnesses, and I told you I wouldn't allow witnesses to testify in violation of the separation order. So what do you have to say about that, [counsel for defendant]?" DeWitt's counsel replied that he had nothing to say, and the trial court sustained the State's objection. DeWitt did not proffer the questions he planned to ask Michelle, or indicate what evidence he sought.

{¶66} It is true that DeWitt did not take certain affirmative steps to prevent the above situation, such as requesting that Michelle remain separated after the completion of her testimony. However, there is no evidence that DeWitt knew that Michelle had remained in the courtroom, and certainly no evidence that he procured her violation of the order. Moreover, because Michelle was a witness for the State and the mother of one of the victims, any advantage from her violation would certainly be gained by the State rather than DeWitt. Therefore the trial court's exclusion of Michelle was not supported by any showing that DeWitt procured or had knowledge of Michelle's disobedience, and was solely supported by the existence of a separation order. As the trial court's decision does not comply with the rule in *Smith* or align with the purpose of Evid.R. 615, the ruling was erroneous.

{¶67} Although the trial court's decision to exclude Michelle was improper, DeWitt has not provided any explanation as to why Michelle was an essential witness, or why her exclusion constituted prejudicial error. There was no proffer for the record as to what DeWitt intended to ask Michelle in a direct examination, and there is no explanation from DeWitt on appeal as to why recalling her to the stand was needed. Further, because DeWitt had already subjected Michelle to cross-examination during her testimony for the State, there is no reason apparent in the record as to why her exclusion constituted prejudicial error. Accordingly, DeWitt's argument regarding Michelle is meritless.

{¶68} Finally, DeWitt attempted to call Stacey Montalvo to testify. However, DeWitt did not personally know Montalvo, and was not aware that she had been sitting through an unspecified portion of witness testimony until the State pointed out her

presence. The State objected to the presentation of Montalvo's testimony on two grounds: one, because she violated the separation order, and two, because the testimony DeWitt intended to elicit was inadmissible as double hearsay. The trial court found merit in both of the State's objections.

{¶69} As for the exclusion decision, the trial court noted that it was obligated to consistently enforce the witness separation order. Here, the record affirmatively reflects that DeWitt did not know Montalvo and did not procure her violation of the separation order. As with the exclusion of Michelle, the trial court's blanket enforcement of the separation order was erroneous. However, the exclusion of Montalvo's testimony did not constitute prejudicial error because the testimony DeWitt wished to elicit was inadmissible or otherwise not relevant.

{¶70} DeWitt intended to ask Montalvo about an Activity Log Report for B.M. that Montalvo completed as part of her employment as a case worker for Children Services. The report notes that Montalvo called Michelle on the telephone on August 5, 2008 and spoke with her about B.M.'s allegations. DeWitt argued that he wanted to use Montalvo as an impeachment witness, because her report states that Michelle stated that B.M. told her certain details about DeWitt's offense that contradict B.M.'s testimony at trial. The trial court noted that Montalvo's testimony about what Michelle said that B.M. said would clearly be inadmissible as hearsay. DeWitt then proffered that he intended to ask Montalvo whether B.M. was present when Michelle made statements to Montalvo, and also whether B.M. uttered the reported statements to Michelle in Montalvo's presence, or if Montalvo's written statements were only those uttered by Michelle.

{¶71} Although DeWitt argues that the exclusion of Montalvo's testimony prevented him from presenting evidence of a contradictory detail in B.M.'s testimony, the third-hand statement of B.M. would not have been allowable during Montalvo's testimony. Had DeWitt been able to ask Montalvo whether B.M. was present when Michelle spoke with Montalvo, the answer would not have affected any material fact in DeWitt's case. Thus, the trial court's exclusion of Montalvo did not constitute prejudicial error.

{¶72} Given the foregoing, the unavailability of Suzanne Ellis did not involve any

decision by the trial court, let alone an erroneous one. And although the trial court's exclusion of Michelle and Montalvo was erroneous, it did not constitute prejudicial error. Accordingly, DeWitt's second assignment of error is meritless.

**{¶73}** In conclusion, the amendment of DeWitt's indictment did not involve an abuse of discretion, and DeWitt did not demonstrate that his defense was prejudiced by the dates in the indictment. Further, the trial court erred in its blanket enforcement of the separation order against two of DeWitt's witnesses, but DeWitt was not prejudiced by the error. Finally, DeWitt did not present a valid argument regarding the unavailability of a third witness. Accordingly, DeWitt's assignments of error are meritless, and the judgment of the trial court is affirmed.

Vukovich, P.J., concurs.

Donofrio, J., concurs.