[Cite as *State v. Santibanez*, 2023-Ohio-3404.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                    Court of Appeals No.  OT-22-035

       Appellee                           Trial Court No.  2021CRI091A

v.

Alejandro Paco Santibanez          **DECISION AND JUDGMENT**

       Appellant                           Decided:  September 22, 2023

* * * * *

James VanEerten, Ottawa County Prosecuting Attorney, and
Thomas A. Matuszak and Barbara Gallé-Rivas, Assistant
Prosecuting Attorneys, for appellee.

W. Alex Smith, for appellant.

* * * * *

**OSOWIK, J**.

{¶ 1} Following a jury trial, the defendant-appellant, Alejandro Paco Santibanez, was convicted of rape and kidnapping by the Ottawa County Court of Common Pleas and sentenced to an indefinite sentence of eleven (11) to sixteen and one-half (16.5) years in prison.  On appeal, appellant claims that the trial court violated his constitutional right to

compulsory process when it precluded his parents from testifying on his behalf at trial. We affirm.

## I.  Background

{¶ 2} On April 30, 2021, appellant was indicted on charges of rape, in violation of R.C. 2907.02(A)(2) and (B), a felony of the first degree (Count 1); kidnapping, in violation of R.C. 2905.01(A)(4) and (C)(1), a felony of the first degree (Count 1); domestic violence, in violation of R.C. 2919.25(A) and (D)(2), a misdemeanor of the first degree (Count 3); and abduction, in violation of R.C. 2905.02(B) and (C), a felony of the third degree (Count 4).  The charges stemmed from allegations made by M.S., appellant's estranged wife, who told police that appellant brutally raped her over the course of several hours on April 23, 2021 in their Curtice, Ohio home.  Appellant denied the charges.  He claimed that the two engaged in consensual, albeit rough sex.

{¶ 3} At the beginning of the three-day trial, the parties requested an order to separate the witnesses, which the trial court granted.  As day two of the trial was beginning, appellant requested that, because the trial was being livestreamed on YouTube, the trial court specify that the separation of witnesses order also applied to viewers, who might be live-streaming.  The court agreed and announced to courtroom spectators and anyone watching on-line that violating its separation order would be sanctioned.

2.

{¶ 4} During its case-in-chief, the state presented the testimony of the victim who described being raped digitally, vaginally and anally by appellant. She added that appellant also punched and choked her, causing her to pass out and vomit. Part of the assault was recorded by appellant, on the victim's cell phone. The recording was played for the jury, and the victim can he heard screaming on it. After the assault, the victim called her sister for help, who took her to a hospital where she was examined by a SANE (sexual assault nurse examiner). The SANE, who also testified, described 17 injuries found all over the victim's body, from facial bruising to tears to her vagina and anus. While at the hospital, the victim received a text message from appellant, in which he described himself as a "monster" and admitting to "unforgiveable" acts that included raping, hitting, choking and threatening to kill the victim. Other trial witnesses included the victim's sister and multiple law enforcement officers.

{¶ 5} After the second day of trial, appellant, who was being held in the Ottawa County Detention Facility, initiated three separate phone calls to his mother, K.A. ("mother'). Each call lasted the full 15-minutes, the maximum allowed by jail-house rule. The calls were also recorded and monitored, which all parties to the call are advised of.

{¶ 6} The next morning, on the third and final day of trial, the state informed the court that it had been contacted by law enforcement about the calls between appellant and mother. The prosecutor was advised that appellant gave mother "a blow-by-blow

3.

account of what the State's witnesses testified to yesterday and prepped her to specifically violate the Rules of Evidence and rape shield statute." In particular, appellant directed that, while mother was on the witness stand, she should "blurt out" that the reason appellant was a "dick" to the victim shortly after they were married was "because she had sent some nude photos of herself to another man."

{¶ 7} When the state finished presenting its case-in-chief, a DVD—containing the telephone calls and marked as Court's Ex. 1—was played for the court and defense counsel. Although the recordings were not transcribed, the hearing that followed the playing of the calls was.

{¶ 8} After listening to the conversations between appellant and his mother, defense counsel acknowledged that mother gained "a lot of knowledge she wouldn't [otherwise] have had" and that appellant "prompt[ed]" mother on "several occasions" to "'talk about this and that.'" Counsel described "this and that" as information pertaining to the victim's sexual "history," which the trial court had specifically "precluded under the rape shield law."

{¶ 9} Defense counsel said that, even though mother and stepfather might "[blurt] out something" and cause a mistrial, he "would still like to call them" as witnesses. The state urged the trial court to preclude their testimony, as a consequence for appellant's "intentional violation" of the court's separation-of-witnesses order.

{¶ 10} In granting the state's motion, the trial court said,

4.

Well, the heads up to what the testimony was * * * over the course of the days is certainly something we tried to not let happen, but I am not sure how damaging that was.

But the prompting to say, "This is what your testimony should be," for me, it really fell apart in that third phone call.

So I will exclude the testimony of both parents at this point.

(3/10/2022 Tr. at 535).

{¶ 11} Following the hearing, the state rested its case, and appellant presented no defense.

{¶ 12} The jury found appellant guilty of rape and kidnapping and not guilty of abduction.[1] Following a sentencing hearing, the trial court imposed an indefinite sentence of eleven to sixteen-and-one-half years in prison as to the rape offense and eleven years as to the kidnapping offense, with the sentences to be served concurrently. The court also ordered appellant to register as a Tier III sex offender.

{¶ 13} Appellant appealed and raises a single assignment of error:

ASSIGNMENT OF ERROR I: Santibanez was deprived of his due process right of compulsory process by not being allowed to call defense witnesses in violation of the 6th and 14th Amendments.

---

[1] The domestic violence charge was dismissed at the request of the state, and the abduction offense was redesignated as Count 3.

5.

## II. Law and Analysis

{¶ 14} An accused shall enjoy the right to have compulsory process for obtaining witnesses in the accused's favor under both the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. The right to compulsory process has been described as "the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. * * * This right is a fundamental element of due process of law." *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.E.2d 1090 (1967). The manner of enforcing the constitutional right to compulsory process is provided by R.C. 2945.45 ("Subpoenas to issue to any country") and Crim.R. 17.

{¶ 15} In this case, subpoenas were issued, at appellant's request, to mother and stepfather, compelling each to testify at trial. In his sole assignment of error, appellant contends—for the first time—that the trial court violated his right to compulsory process when it precluded them from testifying. Appellant not only failed to object to the trial court's ruling at trial but defense counsel expressed his "understand[ing] if the Court takes a position where [the witnesses] are excluded." Because appellant raises this constitutional challenge for the first time on appeal, he has forfeited all but plain error. *State v. Ruble*, 4th Dist. Washington No. 16CA20, 2017-Ohio-7259, ¶ 38-39. To prevail on a claim of plain error, appellant must show that an error occurred, that the error was plain, and that but for the error, the outcome of the trial clearly would have been

6.

otherwise. *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 69. Appellate courts take notice of plain error with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 62.

{¶ 16} Of course, the trial court precluded mother and stepfather from testifying as a consequence for appellant's violation of its separation-of-witnesses order. The purpose of separating witnesses is to prevent a witness from hearing the testimony of other witnesses, which serves to prevent that witness from altering his or her own testimony to support or undermine the prior testimony. *State v. Waddy*, 63 Ohio St.3d 424, 434, 588 N.E.2d 819 (1992), *superseded by state constitutional amendment on other grounds*. Moreover, and important to the facts of this case, the rule also proscribes a spectator or witness from telling a prospective witness what has taken place in court if the judge has ordered separation of witnesses. *State v. Spirko,* 59 Ohio St.3d 1, 14, 570 N.E.2d 229 (1991) (Revealing prior testimony to a prospective witness is "highly improper").

{¶ 17} Normally, the exclusion of a witness should not be disturbed by a reviewing court absent an abuse of discretion. *State v. Smith*, 49 Ohio St.3d 137, 142, 551 N.E.2d 190 (1990). "However, where the court seeks to exclude a witness for violating a separation order, there must be a showing that the party calling the witness consented to, connived in, procured or had knowledge of the witness' disobedience. Secondly, the testimony sought to be introduced must be important to the defense such

7.

that exclusion of the evidence constitutes prejudicial error." *Id. See also State v. Baker,* 6th Dist. Lucas No. L-03-1026, 2004-Ohio-5894, ¶ 11 ("Ohio's long-standing rule permits witnesses to testify unless the court finds the separation order was intentionally violated."). "Therefore, in order to conclude that a trial court's exclusion of a disobedient witness was proper pursuant to *Smith,* a reviewing court must either find that the defense encouraged or knew of the witness's violation, and if the defense did not, then it must find that the witness's exclusion caused no prejudice to the defendant." *State v. DeWitt*, 7th Dist. Mahoning No. 09MA68, 2010-Ohio-4777, ¶ 61-63.

{¶ 18} Here, the evidence is undeniable that "the party calling the witness," i.e. appellant calling his mother to testify, "consented to, connived in, procured or had knowledge of the witness' disobedience." The recorded phone calls clearly show appellant coaching his mother on what to expect and how to testify. Appellant can also be heard saying that he "might use her for something tomorrow * * * [that] hasn't been allowed to be brought up," namely the fact that the victim sent naked pictures of herself to another man. Ironically, appellant's request—early in the trial—that the trial court warn potential witnesses who might be livestreaming, undercuts any possible claim by appellant that he did not realize he was acting in defiance of the separation order. In sum, the evidence clearly establishes that appellant connived and attempted to procure testimony in violation of the court's separation order and the Rape Shield Statute.

Therefore, we find no error, much less plain error, in the trial court's decision to bar mother from testifying.

{¶ 19} Separately, appellant argues that the trial court erred in barring stepfather from testifying because it is "unknown" whether he was a party to the jailhouse calls and therefore also unknown whether he was aware of appellant's malfeasance. We note, as did the state, that the record indicates that stepfather was "usually on the other phone [and] always [with mother]" when trial counsel and mother had conversations about the trial. But, even if we were to agree that it is speculative that father listened in on those calls and/or that mother shared the contents of the calls with stepfather, the problem—for appellant—is that he has failed to offer any evidence that he was prejudiced by the order to exclude stepfather from testifying. Again, appellant did not object to the ruling, and just as problematic, he failed to proffer what stepfather would have testified about. Appellant asserts, incorrectly, that it was the trial court's duty to "voir dire" the parents, but he offers no legal authority to support his claim. And, because appellant made no proffer as to what stepfather would have testified about, we cannot find that his exclusion caused appellant to suffer any prejudice. *Accord State v. Fouts,* 4th Dist. Washington No. 15CA25, 2016-Ohio-1104, ¶ 54, citing *State v. Mitts,* 81 Ohio St.3d 223, 227, 690 N.E.2d 522 (1998), applying Evid. R.103(A)(2) ("More importantly, in the absence of a proffer the issue has not been preserved for review.").

9.

{¶ 20} For the record, we note that defense counsel indicated at trial that he intended to call the parents "because they were part of what happened on the 22nd after the incident occurred," specifically, that the parents "were involved in phone calls with [appellant]" and "they were telling him to do certain things." Thus, the parents would have testified about communications between themselves and appellant *after* the attack, pertaining to *their* advice *to* appellant. In other words, it did not pertain to appellant's guilt or innocence and therefore, we find, would not have resulted in a different outcome, had they been allowed to testify. Given the absence of any proffer and because there is no indication that the excluded testimony was prejudicial to the defense, we find no plain error by the trial court in excluding mother or stepfather's testimony. *Accord Fouts* at ¶ 55 (No abuse of discretion to exclude daughter's testimony as a discovery sanction where father, who was accused of sex crimes against daughter's friend, failed to proffer testimony and where daughter "was not present during encounter between her father and the victim and therefore did not have first-hand knowledge of the events.").

### III.    Conclusion

{¶ 21} The Compulsory Process Clause "provides [a defendant] with an effective weapon, but it is a weapon that cannot be used irresponsibly." *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S. Ct. 646, 98 L. Ed.2d 798 (1988). Here, appellant sacrificed his right to compel testimony as a consequence for his flagrant violation of the trial court's

10.

separation of witnesses order and more generally for attempting to undermine the trial by supplying his mother with testimony he knew was not allowed.

{¶ 22} We find appellant's sole assignment of error not well-taken, and we affirm the trial court's July 21, 2022 Judgment Entry.  The costs of this appeal are assessed to appellant pursuant to App.R. 24.  It is so ordered.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                           _____
                                                    JUDGE

Myron C. Duhart, P.J.

                                          _____

Charles E. Sulek, J.                                         JUDGE
CONCUR.

                                          _____
                                                      JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.