[Cite as *State v. Fouts*, 2016-Ohio-1104.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | Case No. 15CA25 |
| Plaintiff-Appellee, | : | |
| | | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| | | |
| DOUGLAS W. FOUTS, | : | |
| | | |
| Defendant-Appellant. | : | **RELEASED: 3/16/2016** |

APPEARANCES:

Steven H. Eckstein, Washington Court House, Ohio, for appellant.

Kevin A. Rings, Washington County Prosecuting Attorney, and Nicole Tipton Coil, Washington County Assistant Prosecuting Attorney, Marietta, Ohio, for appellee.

Harsha, J.

{¶1} After a jury convicted Douglas W. Fouts of gross sexual imposition and attempted unlawful sexual conduct with a minor, the trial court sentenced him to prison and Fouts filed this appeal.

{¶2} Fouts argues that the trial court erred in denying his motion to suppress statements he made to police. He claims the interview was a custodial interrogation that required a *Miranda* warning, which he did not receive. He also argues that his statements were involuntary because the police engaged in deceptive practices by minimizing the seriousness of his actions. However, the evidence at the suppression hearing reveals that Fouts's statements to police were both non-custodial and voluntary. The police told him that he was not under arrest and that he was not required to speak to them. There was no evidence of promises of leniency, misstatements of law, or

types of deception or coercion by the police that would have overcome his will and forced him to make an involuntary confession.

{¶3}   Fouts also contends that he was denied his constitutional rights to due process and compulsory process when as a discovery sanction, the trial court improperly applied Crim.R. 16(L) by preventing one of two surprise witnesses from testifying.[1] Accordingly, we must first determine whether the trial court erred under state law in applying the rule. The trial court did not impose the harshest discovery sanction available. After considering the circumstances, the trial court permitted one of Fouts's two surprise witnesses to testify, providing the defense counsel made the witness available to speak to the prosecutor at a lunch break during trial. The other surprise witness, Fouts's 15-year-old daughter, was excluded. Because Fouts failed to disclose her, failed to proffer her testimony, and there is nothing in the record that shows she had relevant, non-redundant testimony, the trial court properly exercised its discretion by excluding her. In the absence of a violation of the state evidentiary rule, our analysis ends because Fouts's constitutional argument is premised upon such a violation. Fouts also argues that the prosecutor's objection to the witness and refusal to interview her during a break at trial constituted prosecutorial misconduct that denied him a fair trial. However, this claim is also meritless because the prosecutor's objection to Fouts's two surprise witnesses is not "misconduct", rather it was in keeping with fair trial practice. The premise for his conclusion does not exist here either.

{¶4}   Next Fouts argues that his trial counsel provided ineffective assistance by failing to supplement discovery with the names of two additional defense witnesses,

---

[1] Fouts does not contend that Crim.R. 16(L) and/or its proper application under state law violates his Sixth and Fourteenth amendment rights.

giving a poor closing argument, and failing to request a lesser included offense jury instruction. Fouts's dissatisfaction with defense counsel concerns tactical decisions that do not rise to the level of ineffective assistance. Fouts also failed to show that there is a reasonable probability that but for counsel's actions, the result of the trial would have been different. Therefore, he failed to prove prejudice. And based upon the evidence at trial, he was not entitled to a lesser included offense jury instruction. The state presented uncontroverted evidence of force through the victim's testimony that Fouts held his arms around her, pulled her hair back, and pulled her shirt down. Fouts admitted he hugged his arms around her and moved her hair aside. He did not deny or contest the evidence that he pulled the victim's shirt down. Because Fouts offered no evidence to contest his use of force, and in fact admitted it, it was not reasonably possible for the jury to find him not guilty of the greater offense, but guilty of the lesser one. So, he was not entitled to jury instruction on the lesser included offense.

{¶5}   Finally, Fouts asserts that the trial court erred when it failed to give a sua sponte jury instruction on the lesser included offense of "sexual imposition" and instead instructed only on "gross sexual imposition." However, as we determined, the facts did not warrant a lesser included offense instruction, so the trial court had no duty to give one.

{¶6}   We affirm the judgment of the trial court.

## I. FACTS

{¶7}   The Washington County Grand Jury indicted Fouts on one count each of kidnapping, abduction, gross sexual imposition, and attempted unlawful sexual conduct with a minor, who was 15 years old. Fouts moved to suppress the statements he gave

to police on the grounds that they were custodial but he was not given a *Miranda* warning, and they were involuntary due to police deception. After the trial court denied his motion, a jury found him not guilty of kidnapping and abduction, but guilty of gross sexual imposition and attempted unlawful sexual conduct with a minor.

**{¶8}** At trial the state presented the victim, who testified that her parents had recently separated and she was living with her mother who worked a midnight shift as a nurse. As a result she would frequently go to her friend's house to spend the night and go to school. Her friend was Fouts's daughter who was also 15 years old. The victim testified that she had this arrangement with the Fouts family since August or September 2013 and she was encouraged to use the terms "mom" and "dad" with the Foutses.

**{¶9}** The victim indicated that she contacted Mr. Fouts by phone and asked him if he and his daughter could pick her up so she could spend the night. She expected Fouts's daughter to be in vehicle when he arrived; however, his daughter was not there. Instead of driving her back to the Fouts home, Fouts told the victim that he was having a fight with his wife and did not want to return home yet. He drove the victim to a secluded, wooded area of a high school parking lot. The victim stated that Fouts was drinking beer and told her he wanted to listen to music. Fouts offered her a beer and a cigarette, which the victim refused. The victim stated that Fouts told her to stop calling him "dad" and began talking about his interest in pornography and sexual problems he was having with his wife.

**{¶10}** While she was in Fouts's vehicle, the victim texted Fouts's daughter and told her that Fouts had offered her beer and that they were in the high school parking lot. She texted that Fouts was getting angry that she was texting, and that she was

scared because he was cleaning out the back seat of the vehicle. She testified that he took her phone away and told her she did not need to talk to anyone else because she was up there with him.  The victim testified that at that point, she had no further ability to send a text message.  The state introduced screen shots of the victim's and the daughter's text messages. The exhibit shows that for a period of about 15 minutes, the text messages stopped.  The victim testified that after Fouts took her phone, he got out of the car, cleared out the back seat area, and went around to her side of the vehicle, got in, and asked if he could sit closer to the victim. But she moved, went over the center console, and sat in the driver's side.

{¶11}  The victim testified that after Fouts got into the passenger seat, he pulled her over onto his lap, wrapped his arms around her body, and told her she was beautiful.  She testified that Fouts moved her hair off her shoulder, pulled down her shirt and began kissing the back of her neck.  The victim testified that she told him multiple times to stop and Fouts told her he could tell she was scared and he told her not to be afraid and that it felt good.

{¶12}  When Fouts started driving out of the parking lot, the victim testified she was able to gain possession of her phone and she texted Fouts's daughter and told her what had happened.  The screen shots from the victim's text messages showed that approximately fifteen minutes after her last text, the victim texted that Fouts had put her on his lap and kissed her neck and that he continued to do so even though she had asked him to stop.

{¶13}  The victim testified that when she arrived at Fouts's house, she immediately told Fouts's two daughters what had happened. Fouts's daughters

encouraged the victim to tell Fouts's wife. The victim agreed and texted the wife exactly what had occurred that evening. The state introduced screen shots of those text messages.

**{¶14}** The state also presented Officer Katherine Warden, who testified that after she spoke to the victim and her parents, she went to the Fouts residence in West Virginia to speak with him. Fouts eventually drove his own car to follow her to the police station in Marietta, Ohio. Officer Warden stated that Fouts's wife answered the door and was "very standoffish." The wife did not want to speak to the police and did not want them to come inside the house. Warden testified that at the station Fouts initially lied about taking the victim to the high school parking lot and kissing her. However, when he was told that the parking lot had video cameras and his car was shown on the camera, he changed his story and eventually admitted to driving the victim up there, telling her she was beautiful, hugging her, moving her hair aside and kissing her neck. The jury watched Fouts's 30-minute videotaped interview with Officer Warden.

**{¶15}** Mrs. Fouts testified for the defense but her testimony is not relevant to our task.

**{¶16}** After the jury returned a guilty verdict on the counts of gross sexual imposition and attempted unlawful sexual conduct with a minor, the trial court sentenced Fouts, who appealed.

## II. ASSIGNMENTS OF ERROR

**{¶17}** Fouts raises four assignments of error:

1.    THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S
      MOTION TO SUPPRESS.

2.      DEFENDANT-APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND COMPULSORY PROCESS BY THE DENIAL OF HIS RIGHT TO CALL HIS DAUGHTER AS A WITNESS.

3.      DEFENDANT-APPELLANT'S TRIAL COUNSEL PROVIDED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE.

4.      THE TRIAL COURT ERRED BY REQUIRING DEFENSE COUNSEL TO REQUEST IN WRITING A LESSER INCLUDED OFFENSE JURY INSTRUCTION WHEN THE OHIO SUPREME COURT HAS HELD THESE INSTRUCTIONS ARE REQUIRED.

### III. MOTION TO SUPPRESS FOUTS'S STATEMENT

#### A.  Custodial Interrogation

##### 1.  Standard of Review and Law

**{¶18}**  Fouts challenges the trial court's denial of his motion to suppress. Appellate review of a trial court's decision on a motion to suppress raises a mixed question of law and fact. *State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, 975 N.E.2d 965, ¶ 6. Because the trial court acts as the trier of fact in suppression hearings and is in the best position to resolve factual issues and evaluate the credibility of witnesses, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Accepting these facts as true, we must then "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Hobbs* at ¶ 8, citing *Burnside* at ¶ 8.

**{¶19}**  Police are not required to administer *Miranda* warnings to everyone they question. *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).  Likewise warnings are not required simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.

*Id.* Only a "custodial interrogation" triggers the need for *Miranda* warnings. *State v. Biros,* 78 Ohio St.3d 426, 440, 678 N.E.2d 891 (1997). *Miranda* defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "The ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) quoting *Mathiason, supra*, at 495. The relevant inquiry in determining whether a person is subject to custodial interrogation focuses upon how a reasonable person in the suspect's position would have understood the situation. *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). The subjective views of the interviewing officer and the suspect do not control whether a custodial interrogation occurred. *Stansbury v. California*, 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994); *In re Strum*, 4th Dist. Washington No. 05CA35, 2006-Ohio-7101, ¶ 29-31.

{¶20} Fouts does not dispute the facts surrounding the police interview, but attacks the trial court's legal conclusion that his statements to the police were non-custodial. Fouts claims that the police questioning of him at this home, which continued at the police station, was a "custodial interrogation" but at no time prior to or during the questioning did he receive a *Miranda* warning. He argues that the officer's intent was coercive because she wanted to interview Fouts at the Marietta Police Station where she had jurisdiction, and she planned to threaten Fouts with arrest if he did not cooperate.

## 2. The Suppression Hearing

**{¶21}** Two police officers and an employee from Washington County Children's Services went to the Fouts home in West Virginia in the early evening of the day the victim reported the incident. Officer Warden testified Fouts's wife answered the door and told police she did not want questioning to occur at the house because of the presence of children and asked if the questioning had to occur at the house. The police told her no and explained that Fouts was not under arrest and that he may choose whether to speak with them.  After his wife brought Fouts to the door, he and the police stood outside on the porch for approximately 10 to 15 minutes talking. The police testified that they told Fouts that he was not under arrest and that he did not have to talk to them if he did not want to and that Fouts told them he understood that. The police never touched Fouts or physically restrained him in any way at any time during the questioning.

**{¶22}** Due to the severe cold temperatures, the police asked Fouts if they could continue the questioning at the Williamstown Police Station in West Virginia. Fouts agreed to follow the police in his own vehicle. However, a few moments later, Officer Warden decided to go to the Marietta Police Station in Ohio instead and asked Fouts if he would follow her there. Fouts voluntarily agreed to go to Marietta, which was about a ten-minute drive from Fouts's house, and followed the police in his own car.

**{¶23}** Officer Warden acknowledged that she wanted to have Fouts return to the Marietta Police Station because she had jurisdiction there and may have to take Fouts into custody, depending upon what he said during the questioning. At the time the officer began questioning Fouts, she knew what the minor had alleged occurred and

that Fouts's vehicle was on security videotape at the high school parking lot.  The officer testified that she made it clear to Fouts at his house that he was not under arrest and that he was not required to talk to her or go to the police station, but she did not remind him of that again when Fouts arrived at the police station or during the questioning at the station.

{¶24}  At the Marietta Police Station Fouts and Officer Warden sat in an office with the door closed but not locked. Fouts was not handcuffed or otherwise restrained. Fouts spoke conversationally with the police officer about the mortgage industry, as that had been Fouts's line of work. Fouts had his cell phone with him and used it several times during the questioning to speak to his wife and to review text messages. After listening to Fouts talk about the housing and mortgage markets for several minutes, the officer told Fouts that she had received information about an incident that occurred the previous night between Fouts and a minor, and which the officer hoped was just a misunderstanding. Fouts agreed that some misunderstanding must have occurred. The officer asked Fouts to tell her what happened.

{¶25}  Fouts told the officer that the minor was a friend of his daughter and that the minor had texted him to see about a ride.  The officer asked Fouts about the time frame the minor texted him for a ride and he stated it was about 10 p.m. the previous evening. He voluntarily handed his phone to the officer and told her to look at the text messages. The officer told Fouts that he should correct anything she said that is incorrect during the questioning because the officer did not want to put words in his mouth. Fouts responded affirmatively, stating that he would not answer a question if he thought his answer would be misconstrued. The officer asked him if he went straight to

his house after he picked up the minor. Fouts indicated that the only stop he had made was at a gas station for gasoline and kerosene; Fouts stated that he did not go or stop anywhere else. The officer asked him if he went to the Marietta High School and Fouts denied it. He also denied driving through the high school parking lot. The officer informed him that security cameras in the high school parking lot had captured his vehicle on tape. Upon hearing this, Fouts stated that the minor was driving his vehicle.

{¶26} The officer then stated that she did not think that Fouts raped the minor. Instead, she believed that Fouts "made a mistake" or did something "iffy." She then asked Fouts how long the relationship with the minor had been going on. Fouts denied having a relationship with the minor. The officer told Fouts she was not going to tell his wife what he said during the interview and reiterated that she does not believe Fouts raped the minor, but stated she did believe he had made "a mistake." The officer told Fouts that she understood Fouts pulled the minor onto his lap and started kissing her and that if he had raped somebody, they would be having a different conversation. The officer stated that she thought Fouts probably made a mistake and mistakes can be fixed.

{¶27} She then asked Fouts if he put any of his body parts into the minor. Fouts denied penetrating the minor with any body parts but admitted that he told the minor she was beautiful, pulled her hair back, and kissed her neck. He denied pulling her onto his lap, insisting that she voluntarily climbed onto his lap, but admitted that he had his arms around her in a hug. Fouts stated that the minor told him his behavior was wrong and asked him to stop. Fouts stated that at the same time the minor told him to stop, he had decided to stop on his own. When asked how the incident got started, Fouts admitted

that he had been talking to the minor about sex, that she looks older than her age, and that sometimes the "lines get blurred."

**{¶28}** Officer Warden gave Fouts an opportunity to write out what happened the previous evening. While the officer was talking to him about making a written statement, Fouts took a phone call from his wife and informed the officer that he would need to leave soon to pick up his daughter. The officer left Fouts in the office alone to give him an opportunity to fill out the written statement. After several attempts to write out a statement, Fouts got up and left the office to search for the officer. He located the officer and informed her that he was unable to find the right words and was unhappy with his attempts to write something out. He stated that he felt under pressure because he needed to leave to pick up his daughter. The officer and Fouts walked back to the office and the officer told him that he did not need to fill it out if he did not want to. The officer told Fouts she was not certain she could let him go and told him to take a seat for about five minutes while she made a phone call. Fouts sat back down in the chair and waited. A little later the officer returned to the office and stated, "Okay Mr. Fouts you are ready to go." The police questioning lasted approximately 30 minutes.

**{¶29}** Fouts did not testify or offer any direct evidence at the hearing.

### 3. Analysis

**{¶30}** Nothing in the record before us indicates that Fouts was under a formal arrest or that a reasonable person in Fouts's situation would not have felt free to leave. Officer Warden told Fouts that he was not under arrest and that the decision to speak with the police was his choice. He voluntarily agreed to follow the police in his own vehicle to the station to continue the questioning. He was never handcuffed, restrained

or locked in a room.  He was able to leave and freely walked through the door of the office where the questioning occurred. Even though Fouts's mindset is not controlling, his own statements and actions indicate he subjectively understood he was there voluntarily. For example, he stated he would not answer a question he thought would be misconstrued, he took phone calls from his wife and, based on those telephone calls, informed the officer he would need to leave to pick up his daughter. After being left alone in the office to complete a written statement, he left to look for the officer and inform her that the pressure he felt to leave to pick up his daughter made it hard for him to come up with the right words for the written statement, so he had decided not to provide a written statement. At the conclusion of the questioning, he walked out of the police station, got into his vehicle and left.

{¶31} Although the officer told Fouts to sit and wait about five minutes while she placed a phone call, this occurred after the questioning had ended and she had left Fouts to complete his written statement. At that point, Fouts had already lied to the officer, apologized for lying, and admitted that he had taken the minor to the high school parking lot, told her she was beautiful, held her in a hug, pulled her hair back, and kissed her neck. Even then, the officer did not arrest Fouts, threaten to arrest him, or take him into custody. And, just as Fouts's mindset is not controlling, neither are Officer Warden's subjective intentions about the possibility of threatening arrest if he did not cooperate. Thus, we need not entertain Fouts's speculation about what Warden intended to do if he did not cooperate. *See Stansbury, supra; State v. Boyd,* 4th Dist. Adams No. 02CA744, 2003-Ohio-983, ¶ 12.

**{¶32}** The totality of the circumstances indicates that a reasonable person in Fouts's position would believe that he was not in custody and could freely leave. Because Fouts's statements were not the result of a custodial interrogation, he was not entitled to a *Miranda* warning.

### B. Voluntariness

**{¶33}** Fouts argues that his statements were involuntary because the police engaged in deception by minimizing the seriousness of the crime in order to obtain his incriminating statements.

**{¶34}** He alleges that during the questioning the police "made numerous misleading and false statements to entice [him] into making incriminating statements." He claims that the police admitted to making false and misleading statements at the hearing on the motion to suppress, citing a section of the hearing transcript:

> Q. Do you sometimes minimize the extent of the crime, in an effort to have them open up about what they've done?
> A. Yes.
> Q. And is that a fairly common police tactic, to minimize the seriousness of the offense?
> A. Yes.
> Q. Mm-hum. Did you employ that type of tactic here?
> A. Yes.

### 1. Standard of Review and Law

**{¶35}** Voluntariness of a confession and compliance with *Miranda* are analytically two separate inquires. *Dickerson v. United States*, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). "[E]ven when *Miranda* warnings are not required, a confession may be involuntary if on the totality of the circumstances the " 'defendant's will was overborne' by the circumstances surrounding the giving of a confession." *State v. Petitjean*, 140 Ohio App.3d 517, 526, 748 N.E.2d 133 (2nd Dist. 2000) quoting

*Dickerson, supra* at 434. The ultimate determination of voluntariness presents a reviewing court with a question of law that we answer without deference to the trial court. Katz, *Ohio Arrest, Search and Seizure*, Section 24.3 (2015 Ed.), citing *Arizona v. Fulminante*, 499 US 279, 111 S.Ct. 1246, 113 L.Ed.2d. 302 (1991).

**{¶36}** If all of the circumstances indicate that a confession was coerced or compelled, it cannot be used to convict the defendant.  That determination depends upon weighing the pressure to confess against the confessor's power of resistance. A court reviews "the totality of all the surrounding circumstances – both the characteristics of the accused and the details of the interrogation." *Dickerson* at 434. The totality of the circumstances includes "the age, mentality, and prior criminal experience of the accused; the length intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement."  *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051, paragraph two of the syllabus (overruled on other grounds). Deception is a factor that bears on the voluntariness of a defendant's confession, but "this factor, standing alone, is not dispositive of the issue." *State v. Wiles*, 59 Ohio St.3d 71, 81, 571 N.E.2d 97 (1991). "[V]ague and indefinite" statements do not render a confession involuntary. *State v. Osie,* 140 Ohio St.3d 131, 149, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 100 reconsideration denied, 140 Ohio St.3d 1455, 2014-Ohio-4414, 17 N.E.3d 600, ¶ 100 and cert. denied, 135 S.Ct. 1562, 191 L.Ed.2d 649 (2015).

**{¶37}** When the accused challenges the admission of a confession on the basis it was involuntary, the burden is upon the state to prove the contrary by a preponderance of the evidence. Katz*, supra.*

## 2.  Analysis

**{¶38}**  The record of the suppression hearing shows that Fouts was a 40-year-old man with no apparent mental deficiency who had worked in the real estate business and had previous criminal experience arising from a grand larceny charge. He voluntarily drove himself to the police station and was questioned for approximately 30 minutes. During the interview the officer told Fouts she did not believe he had raped the minor.  The officer testified that she told Fouts that because it was true, i.e. the minor had made no allegations that a rape had occurred.  She testified that she never told Fouts that if he confessed there would be no charges. Fouts neither alleges, nor do we find, any evidence that the police officer made statements constituting direct or indirect promises of leniency, or that she made representations concerning sentencing or probation. Likewise, there is nothing in the record that suggests the officer made any misrepresentations of the law.

**{¶39}**   Fouts's argument is that the officer minimized his offense by telling him she did not believe he committed rape. We find nothing deceptive about this statement; the officer testified that the minor's factual allegations did not include rape. The other possible statements in the record that arguably minimized Fouts's offense were the officer's statement that she believed he "made a mistake" and "mistakes can be fixed", and her characterization of what might have happened the night before as "iffy." However, we find nothing about those vague and indefinite statements that would render his confession involuntary.

**{¶40}**  Nothing in the officer's interview approaches the level of conduct necessary to overcome Fouts's will to remain silent, or otherwise resulted in a coerced

confession.  There was no "badgering" or threatening by the officer. The entire tone of the questioning was casual, conversational, and cooperative. There was no hint of coercion or duress during the interview. Nor was there anything improper in the officer's efforts to create a favorable environment for a confession. There was nothing false, deceptive or coercing about her tactic of minimizing the offense by labelling it a "mistake" and his behavior as "iffy".

{¶41}  Because the trial correctly ruled Fouts's statements were not the result of custodial interrogation and were voluntary, we overrule his first assignment of error.

### IV. Witness Exclusion

### A.  Discovery Sanction

{¶42}  As a premise Fouts posits that the trial court abused its discretion and acted arbitrarily and unreasonably when it excluded one of his witnesses from testifying at trial as a discovery sanction. Although his attorney failed to disclose two witnesses prior to trial, he argues that the trial court should have used a less drastic discovery sanction and allowed both witnesses, rather than just one, to testify. The conclusion to his argument contends that the trial court's "arbitrary, capricious and unreasonable" imposition of a discovery sanction under Crim.R. 16(L)(1)[2] violated his right to due process and compulsory process.

{¶43}  Fouts does not argue that Crim.R. 16(L)(1), if properly applied under state law, violates his constitutional right to due process and compulsory process. *See generally Washington v. Texas,* 388 U.S. 14, 22, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) ("arbitrary rules that prevent whole categories of defense witnesses from testifying on

---

[2] In prior versions of the Rules of Criminal Procedure, the discovery sanction provision in Crim.R. 16(L)(1) was set forth in Crim.R. 16(E)(3).

the basis of a priori categories that presume them unworthy of belief" violate the Sixth

Amendment right to compulsory process). Instead, he argues that the trial court abused

it discretion in applying state law, and that error resulted in the denial of his Sixth and

Fourteenth Amendment rights. Therefore, our analysis initially addresses Fouts's

contention that the trial court misapplied Crim.R. 16(L)(1). *See generally Spencer v.*

*Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (2001) (defendants challenged

Texas criminal procedure rules that governed how the recidivist statutes were enforced,

not the constitutionality of the statutes themselves).

### 1. Standard of Review and Law

**{¶44}** Trial courts possess broad discretion to impose sanctions for discovery

violations, and those rulings should not be reversed on appeal absent an abuse of that

discretion. *See State v. Moss,* 4th Dist. Gallia No. 14CA2, 2015-Ohio-3651, ¶ 7; *State v.*

*Dillard,* 4th Dist. Meigs No. 13CA9,2014–Ohio–4974, at ¶ 13; *State v. Woods,* 4th Dist.

Ross No. 13CA3396, 2014–Ohio–4429, at ¶ 15. An "abuse of discretion" implies that a

court's attitude is unreasonable, arbitrary or unconscionable. *State v. Herring,* 94 Ohio

St.3d 246, 255, 762 N.E.2d 940 (2002); *State v. Adams,* 60 Ohio St.2d 151, 157, 404

N.E.2d 144 (1980). In reviewing for an abuse of discretion, appellate courts must not

substitute their judgment for that of the trial court. *State ex rel. Duncan v. Chippewa*

*Twp. Trustees,* 73 Ohio St.3d 728, 732, 654 N.E.2d 1254 (1995); *In re Jane Doe 1,* 57

Ohio St.3d 135, 137–138, 566 N.E.2d 1181 (1991).

**{¶45}** Crim.R. 16(L)(1) provides that, if, at any time during the course of

proceedings, the trial court determines that a party has failed to comply with the

discovery rules, the court may make any order it deems just, including an order to

prohibit the "party from introducing in evidence the material not disclosed * * *." There are numerous cases where trial courts have excluded witnesses who were not properly revealed to opposing counsel, and those orders were upheld on appeal. *See State v. Lawhorn*, 4th Dist. Ross App. No. 11CA3223, 2012-Ohio-253; *State v. Brooks,* 7th Dist. Jefferson No. 04JE10, 2004–Ohio–4546, at ¶ 19–28; *Mount Vernon v. Szerlip,* 5th Dist. Knox No. 98CA20, 1999 WL 436764 (Jun. 17, 1999); *State v. Johnson,* 5th Dist. Richland No. 98–CA–42, 1998 WL 818026 (Nov. 19, 1998).

**{¶46}** The failure to reveal the names of potential witnesses in discovery under the Rules of Criminal Procedure deprives the opposing party the opportunity to adequately prepare for trial. "Modern trials must not be conducted on the basis of ambush and surprise. Rather, the Rules of Criminal Procedure set forth the applicable procedure to be followed for pretrial discovery." *State v. Moss*, 4th Dist. Gallia No. 14CA2, 2015-Ohio-3651. The overall objective of the criminal rules of procedure is to remove the element of gamesmanship from such proceedings. *State v. Darmond,* 135 Ohio St.3d 343, 2013–Ohio–966, 986 N.E.2d 971, at ¶ 19; *State v. Wilson,* 12th Dist. Butler No. CA2012–12–254, 2013–Ohio–3877, at ¶ 14. However, because the sanction of witness exclusion may infringe on a criminal defendant's Sixth Amendment right to present a defense, courts should endeavor to impose the least severe sanction for the failure to comply with the rules of discovery. *Lakewood v. Papadelis,* 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987). "It is only when exclusion acts to completely deny defendant his or her constitutional right to present a defense that the sanction is impermissible." *Id.* at 5.

**{¶47}** "Before imposing the sanction of exclusion, the trial court must find that no lesser sanction would accomplish the purpose of the discovery rules and that the state would be prejudiced if the witnesses were permitted to testify." *Id.* A trial court must review the circumstances surrounding the Crim.R. 16 violation and consider whether the prosecution "will be surprised or prejudiced by the witness' testimony, the impact of witness exclusion on the evidence at trial and the outcome of the case, whether violation of the discovery rules was willful or in bad faith, and the effectiveness of less severe sanctions." *Id.*

2. Analysis

**{¶48}** Early in the proceedings Fouts's counsel identified three potential trial witnesses, who were the same three witnesses the state had identified: the victim, an employee from Washington County Children's Services, and Officer Warden. Later, Fouts asked for and received new counsel, who did not supplement the initial disclosure with any additional witnesses.

**{¶49}** During opening statements Fouts's counsel told the jury that Fouts's wife would be testifying. Out of the hearing of the jury, the state objected to the wife testifying because she had not been previously disclosed as a witness. The trial court inquired into the nature of the discovery exchanged between the parties and the timing of the various witness disclosures. Defense counsel claimed that he had verbally identified the wife as a witness at an earlier pretrial meeting. Neither the state nor the trial court could recall this verbal disclosure. The trial court asked about the possible prejudice. The state argued that it would be prejudiced if the wife was called as a witness. Although the state conceded that Officer Warden talked briefly to the wife at the house, the state

argued that it did not know what her testimony would be. The court informed defense counsel that he would be permitted to call the wife if he allowed the state to speak to her during a break. Defense counsel agreed to allow the state to speak to the wife. The trial court overruled the state's objection and allowed the wife's testimony on the condition that the state be permitted to talked to her during the lunch break that day. Thus, Fouts was not completely denied his right to present a defense; rather the supplemental surprise witness he identified in opening statement was permitted to testify.

{¶50} After the court decided to allow the wife's testimony, defense counsel disclosed that he also planned to call Fouts's daughter. Counsel claimed that he had also verbally identified her as a witness at a pretrial. Again, neither the court nor the state had a recollection of this verbal disclosure. The state objected to Fouts's daughter because Fouts had never disclosed her as a witness and the state had never spoken to her. The trial court ruled that because defense counsel had not given formal written discovery in the case and had not followed the discovery procedure, the court was not going to permit Fouts to call his daughter.

{¶51} After the lunch recess the state withdrew its objection to Fouts's wife. However, the state did not speak to the daughter and continued to object to her testimony. The trial court indicated that it was going to stand by its earlier ruling and permit testimony from the wife but sustain the state's objection to testimony from the daughter. Defense counsel did not disclose the nature or subject area of the daughter's expected testimony, nor did he proffer the daughter's testimony into the record.

{¶52} In *Lakewood, supra,* the trial court precluded the defendant from calling any of his witnesses for his failure to comply with discovery rules, so the attorney for the

defendant proffered the witnesses' testimony on the record. *Lakewood,* at 2, 4. The Ohio Supreme Court found that Papadelis had been denied a fair trial because the proffered testimony was material and relevant and if believed by the jury, could have led to an acquittal. *Id.* at 4–6.

**{¶53}** Here, the trial court made an inquiry into the circumstances and, rather than imposing the most severe sanction of excluding both witnesses, imposed a lesser sanction of allowing one of the two witnesses because the state had previously spoken to her and had the ability to interview her during the lunch break. Neither the police nor the prosecutor had spoken previously to the daughter and the state maintained its objection to her testifying.

**{¶54}** Fouts contends that his daughter's testimony was crucial to his defense because of text messages between the victim and the daughter. The record shows that the victim sent text messages to the daughter during the course of the evening, and that the state had introduced screen shots of those text messages at trial. Thus the content of the text messages was available to Fouts for use in his defense. Fouts also contends that his wife's testimony at trial was that the victim initially told the wife that his daughter was "blowing things out of proportion." He claims that his daughter's testimony was necessary to have a complete understanding of the events that night. Yet, he did not proffer her testimony as required by Evid R.103(A)(2). And the wife's testimony was presented after the trial court ruled to exclude the daughter as a witness and thus was not a factor the trial court could have considered. Likewise, his daughter was not present during the encounter between her father and the victim and therefore did not have first-hand testimony of the events. Finally, Fouts was not prevented from cross-

examining the victim concerning her statements to Fouts's wife. Thus in the absence of a proffer, it appears that the daughter's testimony could add little, if anything, to the evidence. More importantly, in the absence of a proffer the issue has not been preserved for review. *State v. Mitts*, 81 Ohio St.3d 223, 227, 690 N.E.2d 522 (1998), applying Evid. R.103(A)(2).

**{¶55}** Fouts did not proffer his daughter's testimony; there is nothing in the record or context from which we can conclude that the daughter would have relevant, non-redundant testimony. The trial court inquired into the circumstances concerning Fouts's discovery violation and the prejudice to the prosecution. Given those circumstances the court imposed the least severe sanction consistent with the purpose of the rules of discovery. The trial court did not act arbitrary, unreasonable, or unconscionable when it excluded the testimony of the daughter as a discovery sanction.

**{¶56}** Because we find no error in the trial court's application of Crim.R. 16(L)(1), the premise for Fouts's constitutional challenge does not exist. In its absence there can be no merit to his conclusion that the trial court violated his rights under the Sixth and Fourteenth Amendments, and our analysis ends.

### B. Prosecutorial Misconduct

**{¶57}** Fouts argues that the prosecutor's failure to interview his daughter during the lunch break and refusal to withdraw its objection to her testimony constitutes prejudicial prosecutorial misconduct, which also resulted in a violation of the Sixth and Fourteenth Amendments. The structure of our analysis is the same as that in Section IV (A).

## 1. Standard of Review and Law

**{¶58}** Fouts did not object to the prosecutor's conduct during trial, raising it for the first time on appeal. Failure to object constitutes forfeiture of any challenges on appeal except for plain error. *State v. Black*, 4th Dist. Ross No. 12CA3327, 2013-Ohio-2105, ¶ 20-21 appeal not allowed, 136 Ohio St.3d 1558, 2013-Ohio-4861, 996 N.E.2d 985, ¶ 20-21 (2013); *State v. Garvin*, 197 Ohio App.3d 453, 2011–Ohio–6617, 967 N.E.2d 1277, ¶ 51 (4th Dist.). Thus, the doctrine of plain error applies.

**{¶59}** Under Crim.R. 52(B) we may notice plain errors or defects affecting substantial rights. "Inherent in the rule are three limits placed on reviewing courts for correcting plain error." *State v. Payne*, 114 Ohio St.3d 502, 2007–Ohio–4642, 873 N.E.2d 306, ¶ 15. " 'First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.' " *Id.* at ¶ 16, 873 N.E.2d 306, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). We will notice plain error "only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "Reversal is warranted only if the outcome of the trial clearly would have been different absent the error." *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001).

**{¶60}** "To evaluate allegations of prosecutorial misconduct, we 'must determine (1) whether the prosecutor's conduct was improper and (2) if so, whether it prejudicially affected [the defendant's] substantial rights.' " *State v. Thompson*, 141 Ohio St.3d 254,

284, 2014-Ohio-4751, 23 N.E.3d 1096, 1134, ¶ 162 cert. denied, 136 S.Ct. 83 (2015)

quoting *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 121.

"The conduct of a prosecuting attorney during trial cannot be made a ground of error

unless the conduct deprives defendant of a fair trial." *State v. Apanovitch*, 33 Ohio St.3d

19, 24, 514 N.E.2d 394 (1987).

## 2.  Analysis

**{¶61}**  Fouts did not identify his wife as a witness until his opening statement.

The state objected to her after the jury was excused and the entire discussion

concerning the defense witnesses occurred outside of the jury's presence. Then, only

after the court agreed to allow Fouts's wife to testify, did Fouts identify his daughter as a

witness. The prosecutor objected on the basis of surprise, spent his lunch break

interviewing one of Fouts's surprise witnesses, and did not interview the daughter in

light of the court's ruling that she would not testify.

**{¶62}**  We find nothing improper about the prosecutor's objection to defense

counsel's surprise witnesses or subsequent efforts to interview only one of them during

a lunch break. Discovery under the Rules of Criminal Procedure removes the element of

gamesmanship, surprise and ambush. *All* parties are entitled to seek their enforcement

and have the opportunity to adequately prepare for trial. *State v. Darmond*, 135 Ohio

St.3d 343, 350, 2013-Ohio-966, 986 N.E.2d 971, 977, ¶ 29 (2013) ("Current Crim.R.

16(A) applies to 'all parties in a criminal case,' and 'all duties and remedies' of the rule

apply 'to the defense and the prosecution equally' and are 'intended to be reciprocal.' ").

We reject Fouts's claim that the prosecutor engaged in misconduct. Because we reject

his premise of prosecutorial misconduct, we also reject his conclusion that there was a resulting violation of his constitutional rights to due process and compulsory process.

{¶63} Fouts also argues that his counsel's failure to supplement discovery, which resulted in the exclusion of his daughter's testimony, constituted ineffective assistance of counsel. We address this argument when we address Fouts's next assignment of error.

{¶64} We overrule Fouts's second assignment of error.

## V. Ineffective Assistance of Counsel

{¶65} Fouts argues that his trial counsel provided constitutionally ineffective assistance when he: (1) failed to provide discovery of defense witnesses; (2) gave a poor closing argument; and (3) failed to request a lesser included offense of sexual imposition.

## A. Standard of Review and Law

{¶66} In our review of the claim of ineffective assistance of counsel, we must indulge in "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689. This is essentially a de novo review.

{¶67} To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Short*, 129 Ohio St.3d 360, 2011–Ohio–3641, 952 N.E.2d

1121, ¶ 113; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d

674; *State v. Knauff*, 4th Dist. Adams No. 13CA976, 2014–Ohio–308, ¶ 23. The

defendant has the burden of proof because in Ohio, a properly licensed attorney is

presumed competent. *State v. Gondor*, 112 Ohio St.3d 377, 2006–Ohio–6679, 860

N.E.2d 77, ¶ 62. Failure to satisfy either part of the test is fatal to the claim. *Strickland* at

697; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989).

### B.  Analysis

#### 1.  Failure to Supplement Discovery

{¶68}  Fouts claims that his attorney provided ineffective counsel because he did

not supplement a prior disclosure with two additional witnesses. Even if we assume that

his counsel's failure to disclose two additional witnesses was deficient, Fouts cannot

show resulting prejudice. He was permitted to call one of his surprise witnesses, his

wife, at trial. And, as we noted above, we cannot discern any prejudice resulting from

the trial court's exclusion of his daughter's testimony. Fouts did not proffer his

daughter's expected testimony and there is nothing in the record that would suggest her

testimony would be anything more than marginally relevant. Without some evidence that

the daughter could have added anything of significant benefit to Fouts's defense, we are

left to speculate that he suffered prejudice. We will not presume prejudice from a silent

record. Fouts cannot prevail on a claim of ineffective assistance of counsel.

#### 2.  Closing Argument

{¶69}  Fouts argues that his counsel gave a poor closing argument, which fell

below the objective standard of reasonably effective assistance of counsel. Counsel's

decision on whether to give an opening statement or closing argument and how to

formulate and deliver them are tactical decisions.  *State v. Bradley*, 42 Ohio St.3d

136,144, 538 N.E.2d 373, 381-382 (1989) (rejecting defendant's ineffective assistance

of counsel claim that his counsel's closing argument was "too brief, passionless and

themeless"):

> Appellant argues that counsel's failure to make an opening statement and counsel's closing statement during the guilt phase which purportedly failed to humanize defendant and emphasized the nature of the crime constituted ineffective assistance of counsel. Given, however, the "strong presumption" that counsel's performance constituted reasonable assistance, counsel's actions must be viewed as tactical decisions and do not rise to the level of ineffective assistance. In any event, appellant does not show that there is a "reasonable probability" that but for counsel's actions, the result of the case would have been different. Therefore, the burden of proving prejudice has not been met.

*Id.* at 144; *State v. Burke*, 73 Ohio St.3d 399, 653 N.E.2d 242 (1995) (recognizing that

the waiver of closing argument to the jury does not ipso facto constitute ineffective

assistance of counsel, and that the waiver might simply constitute a matter of trial

strategy).

**{¶70}** Counsel's closing argument, although brief, was a focused attack on the

credibility of the victim. And Fouts does not show how, but for the counsel's closing

argument, the outcome of his trial would have been different in light of his failure to

refute moving her shirt and admission that he wrapped his arms around the victim,

pulled her hair back and kissed her. Therefore, even if we were to assume counsel's

brief closing argument was deficient, Fouts has not met the burden of proving prejudice.

### 3.  Failure to Request a Lesser Included Offense Jury Instruction

**{¶71}** Fouts argues that his counsel should have requested a jury instruction on

the lesser included offense of sexual imposition because the state's proof on the

element of force necessary to prove gross sexual imposition was very weak. "Force" is

an element of gross sexual imposition and means "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). The state must present some evidence of force in addition to the sexual contact.

{¶72} Sexual imposition, in violation of R.C. 2907.06(A)(1) is a lesser include offense of gross sexual imposition, in violation of R.C. 2907.05(A)(1). *See State v. Staab*, 9th Dist. Lorain App. No. 04CA8612, 2005-Ohio-3323, ¶ 7 (noting that the difference between the two crimes is the additional element of force necessary in gross sexual imposition).

{¶73} Trial counsel's failure to request instructions on lesser included offenses is often a matter of trial strategy and does not per se establish ineffective assistance of counsel. *State v. Griffie*, 74 Ohio St.3d 332, 333, 658 N.E.2d 764 (1996), citing *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980), cert. denied, 449 U.S. 879, 101 S.Ct. 227, 66 L.Ed.2d 102 (1980). As noted by the Supreme Court of Ohio, the historical development of trial strategies shows that the lesser included offense jury instruction can sometimes favor the state and sometimes favor the defendant. *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207. Where a defendant wishes to pursue an "all or nothing" defense strategy, counsel may decide not to request the lesser offense instruction. "[D]efendant's counsel's decision not to request an instruction on lesser included offenses—seeking acquittal rather than inviting conviction on a lesser offense—was a matter of trial strategy." *Wine* at ¶ 30.

{¶74} Here, in spite of Fouts's argument that the "force" element of gross sexual imposition "was very weak," defense counsel may have decided to pursue the strategy

of obtaining an acquittal rather than inviting a conviction on the lesser offense of sexual imposition. And in fact, counsel was successful in obtaining an acquittal on two other charges.

{¶75} More importantly, counsel is not required to pursue a vain act. *State v. Sowards*, 4th Dist. Gallia App. No. 09CA8, 2011-Ohio-1660, ¶ 20. Under the evidence presented at trial, Fouts was not entitled to an instruction on sexual imposition.

{¶76} Determining whether a lesser included offense instruction is warranted involves a two-part test. *State v. Deanda,* 136 Ohio St.3d 18, 2013–Ohio–1722, 989 N.E.2d 986, ¶ 6; *State v. Wilson*, 4th Dist. Scioto App. No. 13CA3542, 2015-Ohio-2016, ¶ 42-44. First, a trial court must determine if the requested charge is a lesser included offense of the charged crime. *Id.; State v. Kidder,* 32 Ohio St.3d 279, 281, 513 N.E.2d 311 (1987). Second, the court must consider the evidence:

> "The trial court, after reviewing the evidence, determines whether an instruction on lesser included offenses is appropriate. The trial court must give an instruction on a lesser included offense if under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense."

*State v. Wine,* 140 Ohio St.3d 409, 2014–Ohio–3948, 18 N.E.3d 1207, ¶ 34. However, "[t]he mere fact that an offense can be a lesser included offense of another offense does not mean that a court must instruct on both offenses where the greater offense is charged." *Id.* at ¶ 22. Instead, "the quality of the evidence offered * * * determines whether a lesser-included-offense charge should be given to a jury." *Id.* at ¶ 26. A lesser included offense instruction requires more than "some evidence" that a defendant may have acted in such a way as to satisfy the elements of the lesser offense. *State v. Shane*, 63 Ohio St.3d 630, 633, 590 N.E.2d 272 (1992). "To require an instruction * * *

every time 'some evidence,' however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense." *Id.* at 633. Furthermore, a court must not allow a jury to consider " 'compromise offenses which could not possibly be sustained by the adduced facts.' " *Wine* at ¶ 22, quoting *State v. Wilkins,* 64 Ohio St.2d 382, 387, 415 N.E.2d 303 (1980).

{¶77}  When a court reviews the quality of the evidence offered, the court must consider "[t]he whole of the state's case." *State v. Bethel,* 110 Ohio St.3d 416, 2006–Ohio–4853, 854 N.E.2d 150, ¶ 141 (2006), citing *State v. Goodwin,* 84 Ohio St.3d 331, 345, 703 N.E.2d 1251 (1999). "An instruction on a lesser-included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense." *State v. Carter*, 89 Ohio St.3d 593, 600, 734 N.E.2d 345 (2000).

{¶78}  As we previously noted, sexual imposition is a lesser include offense of gross sexual imposition; the difference between the two crimes is the additional element of force necessary in gross sexual imposition. *State v. Staab*, *supra*. Force need not be overt or physically brutal. *State v. Burton*, 4th Dist. Gallia App. No. 05CA3, 2007-Ohio-1660, ¶ 37. Courts have found the element of force satisfied when the state presented evidence that the defendant manipulated or moved the victim's body or clothing, reached around a victim's body to block their means of escape, or confined a victim in a car. *See generally State v. Burton, supra; State v. Staab, supra; State v. Byrd,* 8th Dist. Cuyahoga App. No. 82145, 2003-Ohio-3958*.*

**{¶79}** A relaxed standard of showing force applies where the defendant holds a position of authority over a child victim. *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), paragraph one of the syllabus; *State v. Riffle,* 110 Ohio App.3d 554, 674 N.E.2d 1214 (1996). Where the case "involves a child and that child's parent, or person who stands in loco parentis, subtle and psychological forms of coercion sufficiently show force." *State v. Shadoan*, 4th Dist. Adams No. 03CA764, 2004-Ohio-1756, ¶ 21.

### B. Analysis

**{¶80}** To support his contention Fouts argues that the "force" element of gross sexual imposition was supported by very weak evidence. He claims that the state's only evidence of force was the testimony of the victim. He is wrong on both contentions.

**{¶81}** Just because the state's evidence is "weak" does not entitle the defendant to an instruction on a lesser included offense. The proper test is proclaimed in *State v. Carter, supra.* The victim testified that Fouts pulled her onto his lap, held his arms around her, pulled her hair aside, and pulled down her shirt. The record also includes Fouts's admission that he held his arms around her in a hug and pulled her hair aside. And, he did not refute or otherwise contest the evidence that he pulled down her shirt.

**{¶82}** Although there was some evidence that Fouts was a father figure and the victim called him "dad", we need not determine whether *Eskridge's* more relaxed standard of "subtle" or "psychological" coercion applies. The record contains sufficient evidence of physical force without applying the relaxed standard. There was uncontroverted evidence of force from the victim's testimony that Fouts held his arms around her and pulled down her shirt, moved her hair, and kissed her against her will. And in his confession Fouts corroborated the victim's testimony and admitted he held

her in a hug and pulled her hair aside. He did not refute her contention that he moved her shirt. Thus, counsel was not required to request an instruction on the lesser included offense of sexual imposition. Under any reasonable view of the evidence, including his admissions, the jury could not possibly find Fouts not guilty of the greater offense of gross sexual imposition but guilty of the lesser offense. Because Fouts was not entitled to a lesser offense jury instruction, his counsel was not required to request one

{¶83} We overrule Fouts's third assignment of error.

VIII. Trial Court's Failure to Give a Lesser Included Offense Jury Instruction

{¶84} Fouts argues that the trial court should have instructed the jury, sua sponte, on the lesser included offense of sexual imposition because *State v. Wine*, *supra*, requires that the trial court give the jury a lesser included offense instruction when the evidence requires it. That may be true as an abstract statement of law but Fouts overlooks the evidence in this record.

{¶85} Just as trial counsel was not required to request a jury instruction that was not warranted by the evidence, likewise, the trial court had no duty to sua sponte give a lesser included offense instruction based on our record. We already determined that Fouts was not entitled to a jury instruction on sexual imposition because of the testimony of the victim and his own admission of the use of force, e.g. holding her in his arms, moving her shirt and hair aside to kiss her against her will. Accordingly, we find no merit in this fourth assignment of error.

III. CONCLUSION

{¶86} Having found no prejudicial error under any of Fouts's assignment of errors, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:  Concurs in Judgment and Opinion.
McFarland, J:  Concurs in Judgment Only.


For the Court


BY:  _____
                William H. Harsha, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**